BURNSIDE STEEL FOUNDRY CO., APPELLEE, *v.* GENERAL METAL PRODUCTS CORP.; ROYAL ELECTRIC, INC., APPELLANT.*

(No. 603—Decided August 2, 1961.)

*Messrs. Shaw & Cox* and *Mr. Robert B. Brewer,* for appellee.

*Messrs. Peterson, Neatherton & Peterson* and *Messrs. Kusworm & Kusworm,* for appellant.

*Per Curiam.* Defendant Royal Electric, Inc., appeals from a judgment in the sum of $7,203.08, plus interest, recovered against it by plaintiff, Burnside Steel Foundry Company, upon a written promise guaranteeing payment for material furnished by plaintiff to defendant General Metal Products Corporation.

Joined as defendants were General Metal Products Corporation, Robert E. McNett, who was subsequently dismissed, and Royal Electric, Inc. The petition alleges a balance due plaintiff from General Metal upon an account in the sum of $7,203.08, upon which judgment was entered by default.

The petition alleges further that, in consideration of plain-

*Motion to certify the record overruled (37316), January 24, 1962.

tiff's selling to General Metal certain castings set forth in the account, Royal Electric, hereinafter referred to as defendant, through its duly authorized president, Robert E. McNett, made an agreement in writing to pay for the same in the event General Metal failed to do so.

The amended answer of the defendant denies any obligation to the plaintiff "because the plaintiff violated the terms and conditions of the guaranty which Royal Electric, Inc., gave to it by refusing to furnish the castings that General Metal Products Corporation ordered, which resulted in a tremendous loss to General Metal Products Corporation."

The reply is a general denial.

Both parties waived a jury. The court found for the plaintiff in the amount claimed and entered judgment accordingly.

The first assignment of error is that it was improper to hold defendant as a surety.

Defendant supports this assignment with alternative arguments. First, it contends that it was released from its guarantee because plaintiff changed the credit terms of the contract. It is claimed that the contract was an entirety so that credit was to be extended until the whole order was delivered; that, therefore, when Burnside ultimately refused to complete the shipments ordered because of failure of General Metal to pay for the respective shipments within 30 days, this refusal constituted a breach of the contract, prevented General Metal from completing a contract which it had with the Ordnance Department and receiving payment therefor, and therefore released defendant.

Secondly, defendant argues that if the terms of the contract were payment within 30 days after each delivery, as claimed by plaintiff, then after General Metal had delayed payment beyond 30 days, plaintiff, by arranging for certain specific payments, including $5.50 per casting when General Metal should be paid by the Ordnance Department, essentially changed the terms of credit.

The court, sitting without a jury, having found upon the issues in favor of the plaintiff, we proceed to examine the record to determine whether such finding is adequately supported by evidence.

The agreements among the parties were based largely up-

on correspondence, although the testimony has also been carefully examined. On June 9, 1956, General Metal mailed a purchase order (No. 13639) to plaintiff for several thousand castings at specified prices, amounting to a total of approximately $25,000.

Upon the order were typed, among other things, the following: "Time is deemed the essence of this contract," "See delivery schedule attached and on separate schedule," and "Per your quotation dated May 4, 1956 signed by R. J. Mathews."

After an exchange of letters about credit information, plaintiff wrote to General Metal on June 19, 1956, denying credit, but offering to go forward with the order upon a certain suggested schedule of payments, but also offering this alternative: "However, if you could obtain a guarantee on this order from some other reliable company who has an established credit to warrant such guarantee, we would be happy to extend *our usual terms of credit*." (Emphasis ours.) These terms had been stated in the quotation of May 4, 1956, referred to, as follows: "Our terms are 30 days net, ½ of 1%—25th & 10th proximo."

On June 25, 1956, defendant wrote the following letter:

"Royal Electric, Inc.
"Manufacturers and Designers of Rotating
Electrical Equipment,
Jamestown, Ohio

"Please address reply to:
1030 W. Second St.,
Xenia, Ohio
2-3574
"June 25, 1956

"Burnside Steel Foundry Co.,
"1300 East 92nd Street
"Chicago 19, Illinois

"Attention:   Frank B. Powers
Vice President

"Gentlemen:

"Mr. Heiser, president of General Metal Products Corp., Wil-

mington, Ohio, has called to my attention the situation as regards the issuance of credit on open account to General Metal Products Corp.

"We are well acquainted with the financial situation at General Metal Products Corp., however, we also know that Mr. Heiser has been able to operate the business on a profitable basis for the past year. Accordingly, Royal Electric will guarantee payment for material procured against G.M.P.C. purchase order No. 13639.

"For your information, Royal Electric, Inc., banks with the Third National Bank of Dayton, Ohio. For information pertaining thereto, please contact Mr. Gillaugh, President of The Third National Bank.

"We are pleased to be of assistance in this instance and should further information be required, please do not hesitate to call on us.

"Very truly yours,

"ROYAL ELECTRIC, INC.
"[signed] Robert E. McNett
"Robert E. McNett
President

"REM/sn"

On June 26, 1956, General Metal wrote to plaintiff, enclosing the above letter of defendant and asking plaintiff to rush a portion of the castings listed in the order of June 9th, stating: "We do not want to be delinquent with the Ordnance Department."

On June 28, 1956, plaintiff wrote to defendant, acknowledging receipt of the letter guaranteeing payment and said: "We are processing the order and will attempt to give them delivery as they have requested."

Further correspondence in evidence indicates that on September 28, 1956, plaintiff wrote General Metal that invoices dated July 2 and August 31, 1956, "are now past our thirty day selling terms," and that "We always appreciate remittances in accordance with our credit terms in order to keep your account in current condition"; that on October 22, 1956, plaintiff again wrote General Metal, stating in part:

"Enclosed you will find a statement of your account to October 9, 1956 which shows a balance of $15,390.20.

"On October 25, 1956, $11,158.87 will have become one month old which means that this amount will be past due as of that date.

"It is important to us that you live up to the terms of credit extended, especially in view of the circumstances under which we extended credit to you. At that time, we cooperated in every way and we shall expect you to give us the same consideration.

"We would appreciate your sending a check by October 25th for $11,158.87."

Frank P. Powers, vice-president of plaintiff, who wrote the letter of October 22, 1956, testified that, as indicated by original typing on the carbon copy, a copy was sent to defendant, to the attention of Mr. Robert E. McNett, president, who, however, denies receiving it. Powers also testified that copies of all letters he wrote on this account were sent to defendant or to McNett, its president. Efforts were made to prove an intimate connection between defendant and General Metal, which was denied; and the evidence is in conflict.

On October 23, 1956, General Metal wrote plaintiff regarding delay in payment, promising payments in November, explaining that its production was delayed because of not receiving castings during August, but promising payment out of receipts from the Ordnance Department, and commenting that the Ordnance Department was very prompt and had agreed to pay on a basis of one half per cent discount in ten days.

On December 27, 1956, plaintiff wrote to General Metal, referring to a telephone conversation and expressing the hope that General Metal would live up to the procedure of payment outlined. Testimony was produced to the effect that this referred to a promise of certain specific early payments and further liquidation of the account on the basis of $5.50 for each casting shipped to the government by General Metal to be remitted immediately upon payments by the government.

On February 2, 1957, General Metal wrote plaintiff, explaining the delay in receiving remittances from the government.

On February 15, 1957, General Metal wrote plaintiff enclosing a check for $4,075.75 covering four weeks invoices deter-

mined on the unit price of $5.50 per casting and stated that although payments by the government had been delayed they would "continue to remit on the basis originally agreed upon and immediately on receipt of disbursement from our customer."

On July 16, 1957, plaintiff wrote defendant, stating that they had been unable to collect a balance of $7,203.08 due them from General Metal, and calling upon defendant to fulfill its guarantee.

Plaintiff introduced into evidence the ledger sheet showing the account of General Metal, indicating 12 separate invoices dated from July 2, 1956, to March 4, 1957, with eight cash credits from December 31, 1956, to March 29, 1957; a maximum unpaid balance of $16,659.24 existing from October 22 to December 31, 1956; and a final balance of $7,203.08 remaining May 10, 1957, after a credit memorandum of that date.

Copies of the 12 supporting invoices were also introduced into evidence. On each of these is printed: "Terms: 30 days net, or ½ of 1% discount 25th inst. and 10th proximo."

These references to the record illustrate adequate evidence to support a finding that these terms of credit were part of the agreement between plaintiff and General Metal and continuously recognized by both as such, and that plaintiff was justified in refusing to supply further castings after March 4, 1957, because of failure on the part of General Metal to pay according to the 30-day terms of the agreement.

In the light of all the correspondence, as well as the testimony, the court would be justified in concluding that the arrangement for certain payments, including $5.50 per casting as General Metal received payment, was a method of collection of the amount past due in order to make the account current, and was an attempt to enforce rather than to change the terms of credit.

The actual operation of this arrangement supports that view, and certainly afforded the defendant no cause of complaint.

When this $5.50 per casting arrangement was made on December 27th the unpaid balance was at its highest point, $16,659.24. No further deliveries were made until March 4, 1957, by which date the balance had been reduced to $9,431.99;

and the only deliveries made after the $5.50 per casting arrangement was entered into were those on March 4th, which aggregated only $736.38. Further payments were made thereafter which, together with the final credit memorandum on May 10th in the amount of $473.79, reduced the unpaid balance to $7,203.08.

Hence, not only was it reasonable to consider the arrangement for payment of $5.50 per casting as a collection plan for reducing the past due amount rather than a change in the credit terms, but the effect thereof was decidedly beneficial to the defendant by reducing the amount of its liability.

It has frequently been pointed out that any change in credit terms, to be availed of by a surety, must be based upon a valid agreement supported by proper consideration.

"* * * in order for a contract for the extension of time to the debtor to have the effect of discharging the guarantor it must be a binding contract based upon a sufficient consideration. In a case of mere delay, a guarantor is not discharged from his obligation except to the extent that he is injured thereby; and where an indulgence to the principal is not founded on some contract, it cannot be considered as discharging the guarantor." 26 Ohio Jurisprudence (2d), 347, Guaranty, Section 36.

"A mere gift of time does not release the surety. It is well established that an extension which will discharge the surety can take place with the knowledge of both creditor and principal by an agreement to extend the time of payment. However, there must be the substitution of a subsequent for a former agreement * * *." 38 Ohio Jurisprudence, 567, Suretyship, Section 191.

There is some contention that if the terms were as claimed by plaintiff (30 days net, ½ of 1%—25th and 10th proximo), still plaintiff had no right to discontinue deliveries because it had waived its right to payments within 30 days by allowing them to become and remain delinquent.

It is only in case of a continued practice of permitting delinquencies that this is true.

"* * * a provision in a contract for cancellation may be resorted to after a continuing breach, although at first the party entitled to cancel chooses to regard the contract as subsisting. A termination of a contract is not waived by the acceptance thereafter of sums due at the time of termination, nor by pay-

ment for services subsequently rendered where the discontinuance of the contract is clearly affirmed.'' 17 Corpus Juris Secundum, 894, Contracts, Section 405.

The evidence justified the court in declining to find a waiver of the original terms of credit. The most substantial invoices were dated from August 31 to October 9, 1956, a period of 40 days. Meanwhile, on September 28, 1956, plaintiff admonished General Metal by letter that its first two invoices, dated July 2, 1956, for $45.47, and August 31, 1956, for $1,836.26, were past the 30-day selling terms.

Then, on October 22, 1956, the more vigorous letter previously quoted from was sent to General Metal, with a copy, plaintiff claims, to defendant. In this letter, and otherwise, plaintiff urged ''that your account be kept current.'' After this letter there were no further shipments until the two smaller final ones of March 4, 1957.

There is some conflict in the evidence as to the extent to which defendant was kept informed of the state of the account. But there is sufficient evidence to justify a finding that it was kept properly informed.

The trial court was adequately sustained by the evidence in finding that defendant was still liable as guarantor, and the first assignment of error is without merit.

The second assignment of error is that the court erred in not permitting defendant to produce evidence of the terms of the contract between General Metal and the Ordnance Department as evidence of the contract intended between General Metal and plaintiff. It is argued that the Ordnance Department contract was entire and indivisible, thus indicating that the parties intended the instant contract to be of a similar nature.

In an action upon a contract, another contract affecting the same subject matter, even if between the same parties, is not admissible in evidence. 21 Ohio Jurisprudence (2d), 207, Evidence, Section 196. The rule applies with special force where the parties are not the same. *Blymyer* v. *Meader, Trustee,* 1 N. P., 355, 3 O. D. (N. P.), 52.

It is interesting to note that the correspondence between the present parties indicates that there was an arrangement whereby the Ordnance Department was obliged to pay for materials as delivered. Hence, it is difficult to see how evidence

of that contract, even if admissible, could have aided the contention of the defendant.

It is our opinion that the trial court properly excluded evidence of General Metal's contract with the Ordnance Department and that the second assignment of error is without merit.

The third assignment of error is also based upon the theory that the contract was entire and indivisible. It is urged that defendant guaranteed the entire obligation to pay for all the materials to be delivered, so that thereafter it was incumbent on plaintiff to deliver the total order. If a change in the agreement between plaintiff and General Metal was to be a condition of defendant's guarantee, it should have been so stated. Instead, in the letter of guarantee, McNett, as president of defendant, said that Heiser, as president of General Metal, had called to his attention "the situation as regards the issuance of credit on open account" and added that "Royal Electric will guarantee payment for material procured against G.M.P.C. purchase order No. 13639." If Royal intended to undertake a different obligation than the one which General Metal was about to assume, it was incumbent upon it to say so.

We find no merit in this assignment of error.

The other assignments of error raise no additional questions.

The judgment will be, and hereby is, affirmed.

*Judgment affirmed.*

CRAWFORD, P. J., KERNS and SHERER, JJ., concur.

(Decided September 25, 1961.)

ON MOTION for rehearing.

*Per Curiam.* Defendant has filed a motion for reconsideration and rehearing. It endeavors to support its contentions by quoting from our opinion. In so doing it has imputed a meaning to our words which was surely not intended and which we believe the language does not support.

In any event, it is the function of the reviewing court in such a case, not to find the facts but to determine whether the conclusions of the trial court are adequately supported by the evidence.

Bearing this principle in mind, we determined that there was sufficient evidence to support findings that the original terms of credit were 30 days net; that when the account became delinquent an arrangement was made to pay $5.50 per casting delivered to the government in order to liquidate the past due balance; and that this was a collection measure and not a change in the terms of credit.

Analyzing the evidence, we pointed out that by this method the delinquent balance was substantially reduced, and that pending the early stages of such collection no further deliveries were made until March 4, when a comparatively small additional amount of merchandise was delivered. It by no means follows, nor did we say, that the further delivery of March 4 was upon new and different terms of credit.

We referred to ''the arrangement for payment of $5.50 per casting as a collection plan for reducing the *past due amount* rather than a change in the credit terms.'' Surely this statement does not justify the implication that we construe the new shipments of March 4 to be upon the collection terms of $5.50 per casting rather than upon the original terms of thirty days net. Nor does the evidence require such a conclusion. On the contrary, the evidence does in our opinion justify the trial court in finding that the terms of credit were not changed so as to release the surety.

To summarize, therefore, it is our opinion that the evidence was such as to support findings of fact upon which the judgment could reasonably be based. It therefore became our duty to affirm the judgment.

The motion for reconsideration and rehearing is overruled.

*Motion overruled.*

CRAWFORD, P. J., KERNS and SHERER, JJ., concur.