**Chase Bank**
v.
**Brookstone Ohio Partnership**
[Cite as 2 AOA 668]

Case No. CA89-07-065
Clermont County, (12th)
Decided March 5, 1990

R.C.1303.04
R.C.1303.72

■

*Thompson, Hine and Flory, Jack F. Fuchs, 1700 Central Trust Tower, Cincinnati, Ohio 45202, for plaintiff-appellant.*

*Lerner, Sampson & Rothfuss Co., L.P.A., J. Michael Debbeler, 120 East Fourth Street, 8th Floor, Cincinnati, Ohio 45202, for defendant-appellee, Shirley Flannery.*

HENDRICKSON, J.

This is an appeal by plaintiff-appellant, Chase Bank of Ohio, from a decision of the Clermont County Court of Common Pleas granting summary judgment in flavor of defendant-appellee, Shirley Flannery.

On October 31, 1980, Tri-State Savings Loan loaned $525,000 to Brookstone, an Ohio partnership, whose general partners were Harold Flannery, Horace Flannery and Earl T. Barnes. As part of the transaction, the Brookstone partners executed a note promising to pay $525,000 to Tri-State in installments, with the entire amount being due and payable on October 30, 1982. They executed a mortgage on a parcel of real estate as security for the note.

That same day, Harold Flannery, Shirley Flannery, Horace Flannery, Zita M. Flannery and Earl T. Barnes executed separate guaranties on both the note and the mortgage. Shirley Flannery is married to Harold Flannery. However, she is not a partner in Brookstone and did not personally receive any funds from the loan. The guaranty in both the note and the mortgage were identical and read as follows:

"In consideration of the loan secured by the within mortgage being made to BROOKSTONE, a partnership, the undersigned, jointly and severally, guarantee the payment at maturity of all obligations of the mortgagor under the within mortgage. This guaranty shall remain in full force until complete payment of the principal and interest secured by the within mortgage shall have been made."

In 1982, Brookstone became delinquent on its loan payments. Through a series of correspondence to the Brookstone partners and their attorney, Tri-State extended the maturity date of the loan and restructured the payments, without Shirley Flannery's knowledge or consent.

Brookstone again failed to make the loan payments. On October 20, 1987, Chase Bank, Tri-State's successor in interest, filed a complaint in foreclosure against Brookstone and its partners, Shirley Flannery and the other guarantors, and numerous other defendants. The various pleadings reveal that Horace Flannery and Zita Flannery, husband and wife, filed bankruptcy. The pleadings also reveal that Earl T. Barnes, now deceased, also filed bankruptcy. Additionally, Chase Bank filed a legal malpractice action against Tri-State's former counsel alleging that through his negligence, the real estate that was security for the loan became landlocked. The malpractice action was consolidated with the foreclosure action.

On April 20, 1988, Chase Bank filed a motion for summary judgment against Brookstone and Shirley Flannery. On March 30, 1989, Shirley Flannery filed a cross-motion for summary judgment against Chase Bank. In a written decision, the trial court held that Shirley Flannery was released from liability because she had not consented to the extension of the maturity date on the note and was therefore entitled to summary judgment. This decision was incorporated into a judgment entry filed June 23, 1989. This appeal followed.

Chase Bank presents three assignments of error for review. Because the first and third assignments of error are related, we will consider them together. They are as follows:

ASSIGNMENT OF ERROR NO. 1:

"The Court of Common Pleas Erred in Granting Summary Judgment in Favor of Shirley Flannery Because Shirley Flannery's Guaranties on the Note and on the Mortgage Were Not Discharged by Any Delay in Collection or Foreclosure."

ASSIGNMENT OF ERROR NO. 3:

"The Court of Common Pleas Erred in Granting Summary Judgment in Favor of Shirley Flannery Because the Guaranties Provide That They Are in Effect Until the Principal and Interest Owed is Paid in Full."

In these two assignments of error, Chase Bank relies upon the Uniform Commercial Code, as embodied in R.C. Chapter 13. It argues that under R.C. 1303.72 (U.C.C. 3-606) and the cases interpreting that statute, Shirley Flannery is not released by the extension of time on the note because she consented in advance to any delay by Tri-State in calling the note due and because the guaranties expressly provide that they "remain in full force and effect" until complete payment of the principal and interest have been made. We find these assignments of error are not well-taken.

R.C. 1303.72 sets out the defenses available under the Uniform Commercial Code to any party who signs a negotiable instrument as a surety.[1] Official Comment 1 to R.C. 1303.72. However, Chase Bank's reliance on R.C. 1303.72 is misplaced, because the note executed by Brookstone and signed by Shirley Flannery as a guarantor is not a negotiable instrument.

In order for a writing to be a negotiable instrument it must contain an "unconditional promise or order to pay a sum certain in money, and no other promise, order, obligation, or power given by the maker or drawer except as authorized by sections 1303.01-1303.78 inclusive of the Revised Code ***" R.C. 1303.03 (U.C.C. 3-104). The note in this case states "[t]his mortgage note is secured by a certain mortgage of even date hereof covering certain real estate therein described and *is subject to* all conditions, provisions and terms set forth in said mortgage." (Emphasis added.) However, R.C. 1303.04 (U.C.C. 3-105) provides that "a promise or order is not unconditional if the instrument *** states that it is subject to or governed by any other agreement." Because the note is conditional, it is not a negotiable instrument and falls outside the scope of Article 3 of the Uniform Commercial Code (R.C. 1303.01 *et seq.*). R:C. 1303.78 (U.C.C. 3-805), Official Comment; *Federal Deposit Insurance Corp.* v. *Barness* (E.D. Pa. 1980), 484 F. Supp. 1134, 1145. See also,

*First City Bank* v. *Air Capitol Aircraft Sales* (C.A. 10, 1987), 820 F. 2d 1127, 1134. Therefore, R.C. 1303.72 is inapplicable.

Accordingly, Shirley Flannery's liability is governed by the common law relating to guarantors and suretys. It is well settled that a guarantor is discharged from liability whenever the terms of the contract or the nature of the obligation guaranteed is materially altered without the guarantor's consent. *Cambria Iron Co.* v. *Keynes* (1897), 56 Ohio St. 501, 511; *Alside Supply Co.* v. *Sagar* (Aug. 1, 1981), Lawrence App. No. 1480, unreported, at 2. A change of the time of performance of the principal obligation is a material alteration of its terms. *Cambria Iron Co., supra,* at 511. Therefore, if the holder of a note gives an extension of time to the principal debtor without the guarantor's consent, the guarantor is discharged. *Rutherford* v. *Brachman* (1884), 40 Ohio St. 604, 623-24; *Hamilton Community Service Corp.* v.*Dues Development Co.* (Oct. 21, 1981), Butler App. No. CA79-12-0017, unreported, at 7-8.

If the agreement between the creditor and the principal debtor for an extension of time was entered into with the consent of the guarantor, the guarantor is not discharged. *Rutherford, supra,* at 623-24. See also, *Burnside Steel Foundry Co.* v. *General Metal Products Co.* (1961), 115 Ohio App. 121. The consent to the extension of time may be granted in the contract of guaranty. Where there is a dispute as to whether an extension of time was contemplated or intended by the parties when executed, consideration must be given to the terms and provisions of the instrument and to the circumstances attending the transaction. *Cambria Iron Co., supra,* at paragraph one of the syllabus. However, guarantors and suretys are favorites of the law and contracts of guaranty will be construed in the guarantor's favor. *Black* v. *Albery* (1914), 89 Ohio St. 240, 243; *Liquidating Midland Bank* v. *Stecker* (1930), 40 Ohio App. 510, 516, appeal dismissed (1931), 40 Ohio App. xiv; *Yearling Properties, Inc.* v. *Tedder* (Sept. 15, 1988), Franklin App. No. 88AP-205, unreported, at 5.

Chase Bank relies upon the following provision in the note (and a similar provision in the mortgage) as demonstrating that Shirley Flannery consented to an extension of time:

"Should any monthly payment under this note or any sum provided to be paid in said mortgage not be paid when due or upon default by the undersigned in the performance of any

condition, provision, or term set forth in said mortgage, then or at any time thereafter, during the continuing existence thereof, the entire principal obligation and all obligations of the undersigned incident to this loan, as specified in said mortgage, shall at the option of the holder hereof, and in addition to any other rights or remedies it may have, immediately become due and payable. The undersigned expressly waive notice of the exercise by the holder hereof of any such option. Failure or delay of the holder hereof to exercise, whenever it may have the right to do so, any right or option it may have arising by reason of any default or breach by the undersigned, shall not operate as a waiver by the holder hereof of any such right in the event of continuing default or breach by the undersigned or any subsequent default or breach."

We find nothing in the language of the guaranties or in the terms of the mortgage or note stating that the guarantors consented to an extension of the maturity date of the loan. The waiver provisions relied upon by Chase Bank provide for the right to enforce future payments upon a present default but do not include the guarantor's consent to a nonenforcement of a present default of payments. The fact that the guaranties provide that they remain in full force and effect until the principal obligation is paid in full does not change this fact. There is nothing in the record indicating that the guarantors ever contemplated that the loan would not be paid at maturity, or if it was not paid, that the maturity date would be extended.

Moreover, it is not clear that the waiver clauses relied upon by Chase Bank apply to the guarantors. The guaranties were located in a separate section at the end of the mortgage and the note below the signatures of the principal debtors. The waiver provisions are contained in the body of the mortgage and the note and refer to the "undersigned." This term is ambiguous because it is unclear whether it refers to the principal debtors, the guarantors, or both. Since it is ambiguous, it must be construed in favor of the guarantors.

Chase Bank relies upon *Federal Land Bank of Louisville* v. *Taggert* (1987), 31 Ohio St. 3d 8, which is not directly applicable because it deals with the interpretation of R.C. 1303.72 (U.C.C. 3-606). However, it is analogous to the present case and is useful by way of illustration. In *Taggert*, the supreme court found, by construing the language of the note, that the surety had consented to an extension of time. The note provided:

"The drawers and endorsers, *and all parties to this instrument*, severally waive presentment for payment, protest, notice of protest, notice of non-payment of this instrument, demanding and all legal diligence in enforcing collection. *The right is expressly reserved to the holder hereof to extend the time of payment of this instrument or of any installment herein provided.*" (Emphasis added.) *Id.* at 8.

In *Taggert*, all parties to the instrument, including the suretys clearly gave consent to an extension of time. The language of the note in that case is clearly distinguishable from the waiver provisions relied upon by Chase Bank in the present case.

We find nothing to indicate that Shirley Flannery ever consented to an extension of time to the principal debtors. Under the common law relating to guaranties, she is discharged from liability. Accordingly, Chase Bank's first and third assignments of error are overruled.

Chase Bank's second assignment of error is as follows:

"The Court of Common Pleas Erred in Entering Summary Judgment in Favor of Shirley Flannery Because Even If Shirley Flannery Was Entitled to a Release Due to the Extension Granted to the Mortgagor, the Release Would Only Be to the Extent That Shirley Flannery Was Prejudiced by the Granting of the Extension."

In this assignment of error, Chase Bank argues that Shirley Flannery was entitled to discharge only to the extent that her rights were impaired as a result of the extension of time and that she did not carry her burden of demonstrating any impairment of her rights. We find this assignment of error is not well-taken.

"[I]n order for a contract for an extension of time to the debtor to have the effect of discharging the guarantor it must be a binding contract based upon sufficient consideration. In a case of mere delay, a guarantor is not discharged except to the extent that he is injured thereby ***." *Burnside, supra,* at 127.

We need not reach the issue of whether the agreement entered into by Tri-State and Brookstone was a binding contract. It is our view that Shirley Flannery was so prejudiced by the extension of time that she should be completely discharged. Shirley Flannery's only guaranty was to pay the note at maturity. There was no evidence in the record of any demand by Tri-State for her to pay the note at maturity.

The bank was more interested in renegotiating and modifying the terms of the loan with the principal debtors. The extension of time left Shirley Flannery with no recourse against the principal debtors, making her liable for the entire amount due when she received no benefit from the loan. She is entitled to complete discharge and the trial court properly granted summary judgment in her favor. Accordingly, Chase Bank's second assignment of error is overruled.

*Judgment affirmed.*

KOEHLER, J., concurs.
JONES, P.J., not participating.

---

[1] R.C. 1303.72 provides:

"(A) The holder discharges any party of the instrument to the extent that without such party's consent the holder:

"(1) without express reservation of rights, releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument of collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest, or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest, or notice of dishonor is effective or unnecessary; or

"***

"(B) By express reservation of rights against a party with a right of recourse the holder preserves:

"(1) all his rights against such party as of the time when the instrument was originally due; and

"(2) the right of the party to pay the instrument as of that time; and

"(3) all rights of such party to recourse against others."