THE PROVIDENT BANK, APPELLANT, *v.* GAST ET AL., APPELLEES.

[Cite as Provident Bank v. Gast (1979), 57 Ohio St. 2d 102.]

(No. 78-571—Decided March 28, 1979.)

*Messrs. Keating, Muething & Klekamp* and *Mr. Lanny R. Holbrook,* for appellant.

*Mr. Charles A. Brigham, Jr.,* and *Mr. Robert W. Brigham,* for appellees.

CELEBREZZE, C. J. The fundamental issue raised in this appeal requires a statutory analysis of R. C. 1303.72(A)(1) (Uniform Commercial Code Section 3—606[1][a]), and can be phrased as follows: When a holder of a note releases two of four co-guarantors from their guaranty, does that release totally discharge the remaining guarantors or does it discharge them only to the extent of their right to contribution from the previously released parties?

The trial judge concluded that the discharge was limited, in that the $15,000 guaranty of the appellees was reduced by $7,500, or the extent of their right of contribution from the Tonkens. In contrast, the Court of Appeals read the statute to permit a discharge identical to that outlined in the release, $47,479.16 and, therefore, well in excess of appellees' original guaranty of $15,000. The effect of that construction of the statute was to give the appellees a total discharge.

The provisions of R. C. 1303.72(A)(1) have yet to be construed by this court. In light of that fact, and for the sake of clarity, this opinion will examine the steps preliminary to invoking the ''discharge'' provision of R. C. 1303.72, as well as the ultimate issue presented for review covering the ''extent'' of that discharge.

A resolution of the present controversy concerning the ''extent'' of the discharge envisioned by the General Assembly requires an examination of the following: (1) the legislative intent underlying the statute and, more specifically, the language of both R. C. 1303.72(A)(1) and (A)(2); (2) case law construing R. C. 1303.72(A)(2); (3) pre-Uniform Commercial Code principles of suretyship governing the rights and liabilities of co-sureties and (4) various commentaries on the Uniform Comercial Code.

The statute in dispute, R. C. 1303.72(U. C. C. 3—606), reads as follows:

"(A) The holder discharges any party to the instrument to the extent that without such party's consent the holder:

"(1) without express reservation of rights, releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest, or notice of dishonor is effective or unnecessary; or

"(2) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right to recourse.

"(B) By express reservation of rights against a party with a right of recourse the holder preserves:

"(1) all his rights against such party as of the time when the instrument was originally due; and

"(2) the right of the party to pay the instrument as of that time; and

"(3) all rights of such party to recourse against others."

As previously indicated, the issue herein involves the correct interpretation of what the General Assembly intended by the language in R. C. 1303.72(A)(1)—that a party to the instrument is discharged "to the extent that" the holder releases any person against whom that party possessed a "right of recourse." In wrestling with this issue the Court of Appeals noted the "abstruse" nature of this portion of the statute. We agree that R. C. 1303.72 (A)(1) is ambiguous, and, therefore, various rules of statutory construction become applicable.

The first step in statutory analysis is to ascertain the rationale underlying the act and, second, to determine

whether the statute applies to the facts as presented. The Official Comments to U. C. C. 3—606(1)(A) reveal that it was meant to be a codification of various suretyship defenses:

"1. * * * The suretyship defenses here provided are not limited to parties who are 'secondarily liable,' but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it * * *."

Applying that rationale to the parties in the present appeal it is clear that the appellees and the Tonkens, as co-guarantors, are included within the reach of the statute due to their classification as "sureties."[2]

Furthermore, since appellees and the Tonkens were *all* guarantors to the extent of $15,000, appellees possessed a "right of recourse" against the Tonkens by way of contribution. *Beneficial Finance Co. of N. Y.* v. *Husner* (1975), 82 Misc. 2d 550, 369 N. Y. Supp. 2d 975. Although the "right of recourse" arose by way of a separate guaranty, it is nevertheless a right "dehors" the instrument and, therefore, encompassed by the statute.

Before turning to the question of the "extent" of appellees' discharge it is necessary to note the statutory prerequisites to effecting that discharge in the first instance. The requirements set forth in R. C. 1303.72(A)(1) can be summarized as follows: (1) The "holder" of the note (appellant) releases a "person" (Tonkens) against whom the aforementioned "right of recourse" exists with knowledge of the existence of that "right of recourse"; (2) the release is executed without the consent of the remaining co-sureties-guarantors (Hamilton and Ruth Gast); and (3) the holder has no "express reservation of rights" against those particular parties. The record reflects the existence of all three requirements.

Turning to the question of whether the discharge is total or partial, it is imperative for this court to consider

---

[2] R. C. 1301.01 (NN) states: " 'Surety' includes guarantor."

certain fundamental rules when it is called upon to interpret an ambiguous statute. R. C. 1.49 codifies some of these general principles and reads, in pertinent part:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

"* * *

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;"

Prior to the adoption of the Uniform Commercial Code in Ohio in 1962, the general rule regarding the release of joint debtors was codified in the predecessors to R. C. 1779.09 through 1779.11 and enunciated by this court in *Walsh* v. *Miller* (1894), 51 Ohio St. 462. In that decision this court held that the release of one of several co-sureties operates to discharge the remaining sureties only to the extent of their right to seek contribution from the party so released. This rule changed the previous common law position providing for a total discharge and is explained further in 74 American Jurisprudence 2d 62, Suretyship, Section 83, as follows:

"* * * But in most jurisdictions this common-law rule has been modified or departed from by the interposition of equitable principles according to which the cosurety is granted a release from liability to the extent to which he suffered actual prejudice, holding him liable for his proportion of the obligation, but exonerating him to the extent to which he could have claimed contribution from his cosurety had the latter not been released. This is also the rule supported by the Restatement."

Section 135 of the Restatement of Security also incorporated this general rule advocating a proportionate discharge, as well as containing language similar to the "reservation of rights" provision set forth in R. C. 1303.72 (B). Section 135 reads as follows:

"(1) Subject to the rule stated in Subsection (2), where the creditor releases one of several cosureties, the obligations of the remaining sureties to the creditor are

reduced to the extent that upon performance of their obligations the released surety could have been compelled to make contribution.

"(2) Where the creditor releases one of several cosureties and as a part of the release reserves his rights against the remaining sureties, the release as such does not have the effect of discharging or reducing the obligations of the remaining sureties."

The principle has also been paraphrased in Simpson's Handbook on the Law of Suretyship, Section 79, at page 400, as follows:

"If a creditor releases one of several cosureties, the remaining sureties are discharged to the extent of the contributive share of the surety released. Where the creditor reserves his rights against the remaining sureties, the release is construed as a covenant not to sue. As such, it does not have the effect of discharging to any extent the obligations of the remaining sureties. * * *"[3]

With the enactment of the Uniform Commercial Code in Ohio, it became clear that the provisions of R. C. 1303.72 govern the release and discharge of co-sureties such as co-guarantors on a negotiable instrument. However, there is no indication, from a reading of that statute, that the General Assembly intended to change the pre-Uniform Commercial Code position both in this state and as enunciated in the Restatement of Security with respect to the general rule advocating a proportionate discharge. Furthermore, a reasonable construction of the "to the extent that" language, as it is applied in R. C. 1303.72(A)(1), leads this court to the conclusion that the General Assembly intended to limit the discharge of a non-consenting co-surety to his right of contribution.

This particular construction of R. C. 1303.72(A)(1)

---

[3] In his discussion of this general principle of law, Professor Simpson sets forth three different theories that have been used to justify limiting the discharge of the remaining sureties to the extent of the contributive share of the surety released. See the analysis at pages 400-403.

(U. C. C. 3—606[1][a]), providing for a partial, as opposed to a total, discharge, has also been espoused by various commentaries on the Uniform Commercial Code. See, generally, 3 Anderson, Uniform Commercial Code 127, at fn. 1, Discharge by Release, Section 3-606:4; 2 Bender's Uniform Commercial Code Service, Hart & Willier, Commercial Paper, page 13-44, Section 1319[1], and page 13-69, Section 13.24[4]; White & Summers, Uniform Commercial Code 434, at note 121, Section 13-14.[4]

In addition, division (A) of R. C. 1303.72, which contains the critical phrase, "to the extent that," also modifies subdivision (A)(2) of that statute dealing with a discharge wherein the holder "unjustifiably impairs any collateral." Courts from other jurisdictions construing that portion of the statute have held that the extent of the discharge permitted is limited by the extent of the injury or impairment of the collateral. See, e. g., *Langeveld* v. *L. R. Z. H. Corp.,* (N. J. Sup. Ct. 1977), 22 UCC Rep. Ser. 106; *First National Bank, Giddings,* v. *Helwig* (Tex.

[4]In note 121, the authors discuss a hypothetical situation, analogous to the current appeal, wherein a holder releases one of two co-makers on a note bringing into operation the provisions of R. C. 1303.72(A)(1) (U. C. C. 3—606[1][a]):

"When two makers sign a note but neither is an accommodation party, and the holder extends time for one or releases him, what result under section 3—606? On its face, section 3—606 seems to discharge the other co-maker to the extent of half his liability, even though such co-maker is not an accommodation party. This is so because 3—606 'discharges any party to the instrument *to the extent that* without such party's consent the holder . . . releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse. . . .' If the parties were co-makers to a note and neither was an accommodation party, one co-maker would have a right of recourse by way of contribution against the other party for one-half the note. Thus even though the co-maker is not an accommodation party, he would be discharged to the extent of one-half by 3—606(1)(a)." (Emphasis *sic.*)

For an interesting discussion of the problems inherent in an interpretation of U. C. C. 3—606(1)(a) and the cryptic "to the extent that" language contained therein, see Note, Suretyship in Article 3 of the Uniform Commercial Code, 17 West. Res. L. Rev 318-25 (1965).

Civ. App. 1971), 464 S. W. 2d 953; *Christensen* v. *McAtee* (1970), 256 Ore. 333, 473 P. 2d 659. Thus, the *pro tanto* discharge available under subdivision (2) is further evidence of a legislative intent to provide for a similar proportionate discharge pursuant to a release under subdivision (1).

In conclusion, when one of several co-guarantors on a note is completely released from his obligation by the holder, without an express reservation of rights, the release operates to discharge the remaining co-guarantors, pursuant to R. C. 1303.72(A)(1), to the extent of their right to contribution from the co-guarantor so released. The trial judge was correct in so interpreting the statute and concluding that the appellees remained liable in the sum of $7,500.

Therefore, the judgment of the Court of Appeals must be reversed.

*Judgment reversed.*

HERBERT, W. BROWN and SWEENEY, JJ., concur.
P. BROWN and McCORMAC, JJ., dissent.
HOLMES, J., not participating.

McCORMAC, J., of the Tenth Appellate District, sitting for LOCHER, J.

McCORMAC, J., dissenting. The majority has ignored the plain language of R. C. 1303.72 in interpreting the statute to provide that the complete release of the Tonkens, co-guarantors, did not result in the complete release of the Gasts, partial co-guarantors. While the provisions of R. C. 1303.72 may be abstruse to the extent that careful reading is required, they are not ambiguous.

R. C. 1303.72 provides that, if the holder discharges any party to the instrument, the holder similarly discharges a party who has a right of recourse against the

discharged party unless an exception set forth in the statute applies.

Provident completely released all rights against the Tonkens, parties against whom the Gasts had a right of recourse. Thus the Gasts are entitled to a release to the same extent (completely) unless one of the statutory exceptions applies. Those are twofold: (1) consent by the Gasts, and (2) express reservation of rights by Provident against the Gasts pursuant to R. C. 1303.72(B).

The Gasts did not consent to the discharge of the Tonkens, which disposes of the first exception. While Provident could have protected its rights against the Gasts without consent by express reservation of rights in the release pursuant to R. C. 1303.72(B), that was not done. The release given the Tonkens was a complete and unequivocal release with no express reservation of rights.

The language "to the extent" in R. C. 1303.72(A) means to the extent that the other party is released raththan to the extent that his right of recourse is not preserved. There is no qualification in R. C. 1303.72(A)(1) to the discharge of a person in the Gasts' position other than to the extent that the person against whom he has a right of recourse is released. Such limited discharge is provided for in R. C. 1303.72(A)(2) where collateral is unjustifiably impaired, in which case the discharge only goes to the extent of impairment. If a limited discharge were intended in R. C. 1303.72(A)(1), the statute would so provide by stating that the discharge is to the extent that the right of recourse is impaired. The Uniform Commercial Code was carefully and meticulously drafted by the most skilled commercial law lawyers in the United States. It is hardly flattering to their outstanding efforts to hold that their draftsmanship was as careless as the majority would have us believe. The majority has simply added language not in R. C. 1303.72 and not intended to be there.

This case demonstrates why a complete discharge in accordance with the plain meaning of the statute should be the law. The holder of the instrument is given the pro-

tection of either obtaining the consent of the other party prior to release or qualifying the release by inserting an express reservation of rights provision. In this case, Provident released the co-guarantors, the Tonkens, as part of a compromise of a lawsuit in the Court of Common Pleas of Butler County where the Tonkens sued Provident for $6,000,000. Provident released its claim against the Tonkens for $47,479.16 in consideration of the dismissal of the Tonkens' suit with prejudice. The discharge of the Tonkens and the release on its face indicate discharge of the *entire* debt as consideration for settlement of the $6,-000,000 lawsuit, since no rights against any other party are expressly reserved. If the Tonkens received credit for payment of the entire amount of the note as consideration for dismissal of their $6,000,000 lawsuit, there is no liability on the note remaining to assert against the co-guarantors. At this point, it is difficult for the co-guarantors to prove what the value of the consideration given the bank by the Tonkens was, *i.e.*, the settlement value of the Tonkens' $6,000,000 lawsuit. The record contains only an unsubstantiated statement by an officer of Provident, the Senior Vice President, that Provident received "nothing" for the release.

The majority decision demonstrates the undesirability of construing R. C. 1303.72(A)(1) to be that the discharge is only to the extent that a right of recourse is prejudiced since it leaves open questions which are often difficult to answer, such as the value of the consideration that a released party has given the holder of the obligation, particularly when the consideration consists of the dismissal with prejudice of another lawsuit. Therefore, even if R. C. 1303.72(A)(1) is held to be ambiguous, as is first required before a court is permitted to determine the intention of the legislature, reasons predominate in favor of determining that the intention of the legislature was to totally discharge a co-party unless there was consent or an express reservation of rights. R. C. 1.49 reads in its entirety as follows:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects; ·

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute."

In enacting the Uniform Commercial Code, the object was to achieve clarity and uniformity in determining the obligations of parties involved in commercial transactions. The object of clarity mitigates in favor of interpreting R. C. 1303.72(A)(1) as it reads on its face. The majority's reliance upon the common law is misplaced. It is no longer necessary, as it was prior to adoption of the Uniform Commercial Code, to find it unequitable to totally release a co-guarantor when complete payment was not received from the released party. R. C. 1303.72 now provides means to the holder to protect himself when part consideration is paid by one party and rights are to be retained against another. Provident did not utilize the provisions to retain rights against others in R. C. 1303.72 nor did the Gasts receive the protections to be given them if rights were to be retained against them. The consequences of the construction adopted by the majority is to leave the law in a state of uncertainty, rather than uniformity and clarity, and to possibly allow the holder to collect more than the total amount of the obligation in the event that the guarantor is unable to prove that the total obligation was paid by the released party.

Reliance upon Ohio law is also misplaced, as the Uniform Commercial Code was ultimately adopted in every jurisdiction in the United States and was designed to make uniform the rules to be applied in commercial obligations throughout the country. As the majority admits, the law

in some jurisdictions prior to the adoption of the Uniform Commercial Code was to totally discharge a co-surety if one surety had been totally discharged without reservation of rights. Since the uniform law was adopted in Ohio, it is unrealistic to conclude that the General Assembly intended to follow former Ohio law. A leading commentary on the Uniform Commercial Code sets forth the correct interpretation of discharge by release in the paragraph immediately preceding that quoted by the majority. 3 Anderson, Uniform Commercial Code 127, Section 3-606:4, provides, in part, as follows:

"The holder of an instrument may intentionally or unintentionally discharge a third person by his release of a particular party. If the holder gives a release to one party he may discharge any other party to the instrument if the holder has acted without the consent of such other party, and without making a reservation of rights."

Applying that construction, which is contained within the plain meaning of R. C. 1303.72, the Gasts are entitled to a discharge to the same extent as the Tonkens since the Tonkens' release was without consent of the Gasts and without reservation of rights.

The judgment of the Court of Appeals should be affirmed.

P. BROWN, J., concurs in the foregoing dissenting opinion.