392 So.2d 364 (1981)
B.W. DEESE and Gladys B. Deese, His Wife, Appellants,
v.
Frank MOBLEY, Appellee.
No. PP-41.
District Court of Appeal of Florida, First District.
January 16, 1981.
Frank M. Gafford, Lake City, for appellants.
Martin S. Page, of Darby, Peele, Page & Bowdoin, Lake City, for appellee.
LARRY G. SMITH, Judge.
Appellants, Mr. and Mrs. Deese, appeal from a final judgment in their mortgage foreclosure action discharging appellee, Mr. Mobley, from any liability under the note and mortgage. The Deeses contend that the court erroneously determined that an agreement between the Deeses and Hazel Mobley, appellee's former wife and a comaker on the note, whereby the Deeses released Mrs. Mobley from liability on the note, had the effect of also releasing Mr. Mobley. We find error and reverse.
In 1968 Mobley and his wife Hazel purchased some land from appellants, giving a promissory note and purchase money mortgage to secure the sum of $16,000.00, the balance of the purchase price after a down payment of $1,000.00. In 1973 the Mobleys were divorced and became tenants in common, each owning an undivided one-half interest in the land. A provision in the final judgment of divorce ordered Mr. Mobley to make all payments on the Deese mortgage.
Shortly after the divorce, Mrs. Mobley discussed with Mr. Deese her desire to sell her undivided one-half interest in the land. Mr. Deese, being unsure what effect his purchase of her interest would have on his security under the mortgage, suggested that his daughter purchase the property from Mrs. Mobley. Mrs. Mobley understood that she would be relieved of her liability on the note and mortgage, and that the Deeses would look solely to Mr. Mobley for satisfaction of the debt. Mr. Deese examined *365 a copy of the divorce decree, which he interpreted as making Mr. Mobley solely responsible for the obligation under the note and mortgage. Mrs. Mobley then conveyed her interest in the property to the Deeses' daughter, in turn for which she was paid the sum of $1,000.00 from the daughter's funds. At the time of the transaction, the mortgage was in default, there being unpaid principal of $16,000.00, and unpaid interest of approximately $4,000.00. The Deeses later filed this foreclosure action against Mr. Mobley only.
The trial court ruled that since the actions of the Deeses operated as a release of Mrs. Mobley from the entire debt, this had the effect of also releasing Mr. Mobley, with whom Mrs. Mobley was jointly and severally liable on the note[1]. The rule of law applied by the trial court is found in Penza v. Neckles 340 So.2d 1210 (Fla. 4th DCA 1976), approved 344 So.2d 1282 (Fla. 1977), which held that the written release of one joint and several obligor on a contractual obligation discharged from liability the other joint and several obligor, even though the release expressly stated that it was not the obligee's intention to release the other joint and several obligor and reserved the right to sue the other joint and several obligor. Appellee argues in support of the trial court's decision that this rule is one of the "ordinary rules of contract law" contemplated by the "discharge" provisions of Section 673.601(2), Florida Statutes (1979), which provides in part:
673.601 Discharge of parties. 
* * * * * *
(1) Any party is also discharged from his liability on an instrument to another party by any other act or agreement with such party which would discharge his simple contract for the payment of money.
In 3, Anderson, Uniform Commercial Code, 63601: 17 "Release of joint maker," the author states (at page 103):
The general rule that the release of one co-debtor releases the other co-debtors applies to the release of one or more  less than all  of the obligors on the promissory note who are jointly or jointly and severally bound, by virtue of the provision that a negotiable instrument is discharged by any act which would discharge a simple contract for the payment of money. The reason often advanced in support of this rule is that since the debtors have a right of contribution among themselves, the releasing creditor ought not to be allowed to enforce his claim against one whose remedy of contribution has been destroyed by the release.
In another jurisdiction the court has determined that a negotiable instrument may be discharged by an oral release or an oral agreement entered into for valuable consideration, adopting what it presumed to be the majority resolution of the conflict among jurisdictions which have adopted the Uniform Commercial Code. Brunswick Corporation v. Briscoe, 523 S.W.2d 115 (Mo. App. 1975).
Despite the foregoing, our reading of the Uniform Commercial Code dealing with negotiable instruments (Chapter 673, Florida Statutes) as applied to the facts of this case, convinces us that the discharge and release of Mrs. Mobley did not release Mr. Mobley of any and all liability, as found by the trial court, but only released him from one-half of the debt.
First, we find upon review of the testimony that the "agreement" between Mr. Deese and Mrs. Mobley does not substantiate appellee's contention that the entire debt evidenced by the promissory note was discharged. Assuming for the purposes of this decision, although it is questionable, that the "understandings" of the parties to *366 this transaction would qualify as a "release" in the Penza v. Neckles sense[2] we find from review of the record an absence of evidence sufficient to substantiate appellee's claim that the entire debt was discharged. Mr. Deese denied that he agreed with Mrs. Mobley to forgive the debt against her. In his deposition he testified that what he told Mrs. Mobley was: "I will let you, Mrs. Mobley, sell your interest to her, Mary Ann [the Deeses' daughter], and take you off the note for one-half the mortgage and give you $1,000.00." The transaction was further explained by the question and answer given by Mr. Deese on cross-examination by appellee's counsel at the final hearing before the court:
Q. So then I would be correct in saying that your deal with Mrs. Mobley was, you would give her $1,000.00 over your daughter's name in return for which she'd give your daughter a deed to her one-half interest, and you would additionally take her off the note or forgive her of one-half of the debt that you are suing on here today; is that not correct? (emphasis supplied)
* * * * * *
A. If I said it there, then it is right, yes, sir. I can't remember just the words.
Q. All right. And then it is your intention and has been your intention ever since then that Mrs. Mobley, once she gave a deed to your daughter and took the $1,000.00, was no longer obligated on this debt?
* * * * * *
A. In my mind, I felt she was off of it, yes, sir.
Mr. Deese further testified that upon his examination of the divorce decree between the Mobleys, he noted and relied upon the provision which made Mr. Mobley obligated for all of the mortgage, and "it left her hand, left her half to herself."
Mrs. Mobley testified in her deposition, admitted at the final hearing, that after she conveyed her interest in the property and received the money, "I figured I was out of it and didn't have anything to do with it." She stated also that it was her understanding that Mr. Deese understood also that she would no longer be liable on the mortgage. She further stated, however, that her liability on the note in no way entered into the purchase price of her agreement to sell her one-half interest in the property, and although she thought she would "not be liable" on the note after the sale, she stated that in her conversation with Mr. Deese the note and mortgage and the matter of her payment of it were not mentioned. The following questions and answers also appear in the portions of her deposition introduced into evidence:
Question: Now, did Mr. Deese give you an agreement in writing or any other memorandum that he agreed to absolve you from any obligations on the note or anything like that?
Answer: No, sir.
Question: Well, what exactly were the terms of your agreement with Mr. Deese that you were to be released from the note and mortgage?
Answer: Well, after I sold him my interest in it I thought it would be up to him and Mr. Mobley.

*367 Question: Well, I concur with that, but what agreement? Did Mr. Deese give you any contract?
Answer: No sir.
Question: Isn't it true, in fact, you and he did not actually discuss that precise point?
Answer: Right, he never did say anything to me about it.
As in the case of other defenses to negotiable instruments, the defendant has the burden of establishing his defense of discharge by a preponderance of the total evidence. This accords with the general rule that the burden of proving payment as a defense is upon the defendant in an action on a note. 6 Fla.Jur.2d, Bills and Notes, § 463. Mrs. Mobley's "understanding" that she was relieved of any further liability on the note, considered in the light of her testimony that her obligation to pay the note was not discussed, leaves only the testimony of Mr. Deese as to exactly what representations were made with respect to discharge of the note. We find nothing in Mr. Deese's testimony, nor in the reasonable inferences to which it is susceptible, to support a finding of an agreement with Mrs. Mobley to discharge the entire debt. His statements rather clearly evince an offer to relieve her of one-half of the debt, which she accepted by the conveyance and receipt of the $1,000.00 payment. In reality, it is clear that while Mr. Deese spoke of relieving Mrs. Mobley of her one-half of the debt, he no doubt entertained the notion, based upon the provisions of the divorce decree, that Mr. Mobley would remain liable for the entire debt, and that the mortgage security held by the Deeses would remain unimpaired notwithstanding the transaction between Mrs. Mobley and the Deeses' daughter. Thus, in their foreclosure suit the Deeses sought recovery of the entire mortgage indebtedness from Mr. Mobley.
Since we find no basis for the conclusion that the entire debt was discharged by agreement with Mrs. Mobley, Section 673.603, Florida Statutes (1979), would apply, under which the liability of any party is discharged "to the extent of his payment or satisfaction to the holder, ... ." In return for her conveyance of an undivided one-half interest in the land, plus $1,000.00, Mr. Deese agreed to "take her off the note or forgive her of one-half of the debt." While it is true that Mrs. Mobley "understood" that she was relieved of the debt, presumably in its entirety, her unilateral understanding was not based upon any agreement with or representations made by Mr. Deese. Because Mrs. Mobley was discharged from half of the debt, based upon the admissions of Mr. Deese, Mr. Mobley would be discharged also, to the same extent, that is, one-half of the total debt. As a matter of fact, at one point in his testimony, appellee stated, in answer to the question whether he still owned his half interest in the land: "Yes, sir, I feel like I do. Once I pay my half of the mortgage, I feel like I do." The same question was thereafter repeated, with an objection on the grounds of irrelevancy and immateriality being sustained.
Appellee suggests that the trial judge could well have bottomed his ruling upon a finding that Mr. Mobley was discharged under Section 673.606(1)(a), Florida Statutes, which provides:
673.606 Impairment of recourse or of collateral. 
(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:
(a) Without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, ... .
We agree with appellee's contention that the identity of persons having a "right of recourse" referred to in this section would ordinarily be determined from the face of the note itself, unless the holder had knowledge of some separate agreement, rather than from the provisions of a divorce decree, which, as pointed out by appellee, is considered primarily as a resolution of the *368 rights and interests of the parties to the divorce, and in many instances is subject to change by subsequent action of the court. Again, however, we find in the quoted language of Section 673.606(1)(a) no support for appellee's contention that Mr. Mobley should be relieved of the entire debt. We note first that this provision deals with "suretyship defenses." See Florida Code Comments and Uniform Commercial Code Comment, 19B, Florida Statutes Annotated, § 673.606; 3, Anderson, Uniform Commercial Code, § 3-606:4, 606:5. There appears to be a conflict of authority on whether the term "any party", as used in the Uniform Commercial Code § 3-606(1)(a) (Section 673.606(1)(a), Florida Statutes), includes co-makers, Rushton v. U.M. & M. Credit Corporation, 245 Ark. 703, 434 S.W.2d 81 (1968), or does not include co-makers (except accommodation makers), Wohlhuter v. St. Charles Lumber and Fuel Co., 62 Ill.2d 16, 338 N.E.2d 179 (1975); Provident Bank v. Gast, 57 Ohio St.2d 102, 386 N.E.2d 1357 (1979); and Hooper v. Ryan, 581 S.W.2d 237 (Tex.Civ.App. 10th Dist., 1979). But the authorities indicate that the release of one of two makers under Section 3-606(1)(a), Uniform Commercial Code, discharges the other to the extent of only half his liability, since one maker would have the right of recourse against the other maker for only one-half of the note. See Provident Bank v. Gast, supra, at page 1360, note 4, citing White and Summers, Uniform Commercial Code, page 434, at note 121, Section 13-14.
According to the foregoing authorities, assuming Section 673.606(1)(a) is applicable, Mr. Mobley would be entitled to discharge as to only one-half of the obligation evidenced by the note and secured by the mortgage, a result consistent with the one we reach here on the factual basis previously discussed.
REVERSED and REMANDED for further proceedings consistent with this opinion.
ROBERT SMITH and WENTWORTH, JJ., concur.
NOTES
[1] Since the note did not state whether the Mobleys were jointly or severally liable, they became jointly and severally liable by operation of Section 673.118(5), Florida Statutes (1979):

(5) Unless the instrument otherwise specifies two or more persons who sign as maker, acceptor or drawer or indorser and as a part of the same transaction are jointly and severally liable even though the instrument contains such words as "I promise to pay."
[2] Here the "release" relied upon in appellee's defense was based entirely upon oral statements made by Mr. Deese contemporaneously with and as an inducement for the transaction between Mrs. Mobley and the Deeses' daughter. Penza v. Neckles, supra, deals with a written release, of a contractual obligation, not a negotiable instrument. The rights as between holders, makers and sureties of promissory notes qualifying as negotiable instruments, with respect to the discharge of one by the discharge of another, are governed by statute, Chapter 673, Florida Statutes. See Brunswick Corporation v. Concorde Yachts, Inc., 370 So.2d 102 (Fla. 4th DCA 1979). We defer further attempts to place a "label" on the transaction in question because this issue has not been briefed by the parties. We note, however, the discussion in 10 Fla.Jur.2d, Compromise, Accord and Release, § 1, pointing out that the lines of distinction among accord and satisfaction, compromise and settlement, novation, payment, and release are not well-defined. We note further that a release, unlike accord and satisfaction, and compromise and settlement, generally must be in writing. 10 Fla.Jur.2d, Compromise, Accord, and Release, § 1, and 28 Fla.Jur., Release, § 2.