John M. and Mary Ann BISHOP,
Plaintiffs-Respondents,

v.

UNITED MISSOURI BANK OF CAR-
THAGE, Defendant-Appellant.

No. 12683.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 17, 1983.

Thomas E. Klinginsmith, Thomas L. Williams, Carthage, for plaintiffs-respondents.

Jerry E. Wells, Joplin, for defendant-appellant.

GREENE, Chief Judge.

Defendant, United Missouri Bank of Carthage, appeals from an order and judgment of the trial court sustaining John and Mary Bishop's motion for summary judgment on count II of their first amended petition, and for summary judgment in the Bishops' favor on the bank's counterclaim. Count II of the first amended petition sought a declaratory judgment that the Bishops, as comakers, were discharged under § 400.3–606 [1] from any obligation on a promissory note since the other comakers to that note had been released by the bank. The bank's counterclaim was for the unpaid balance of the note.

Summary judgments are authorized only when 1) there is no issue as to any material fact, and 2) the party requesting the summary judgment is entitled to it as a matter of law. *Clevenger and Wright Co. v. A.O. Smith Harvestore Products, Inc.,* 625 S.W.2d 906, 908 (Mo.App.1981). Our review of the record is made in the light most favorable to the defendant bank. *Kinder v. Notorangelo,* 615 S.W.2d 433, 434 (Mo.App.1980).

1. All statutory references are to RSMo 1978.

Based on the pleadings, affidavits, depositions, and interrogatories, the material facts before the trial court at the time it entered summary judgment were as follows.

On January 31, 1977, John and Mary Bishop and Henry and Elizabeth Mohr executed a promissory note for $115,000 in favor of the United Missouri Bank of Carthage. This note enabled Mr. and Mrs. Mohr to buy a 49% interest in the AirCo Tool Engineering Company owned by the Bishops. Almost $84,500 of the loan proceeds were actually used to pay some of the Bishops' prior loans at the bank, and the remaining $30,500 were credited to the company's account at the bank.

Collateral given to support the loan was 1) an assignment, with power of attorney, to the bank of John Bishop's rights in an assignment of inheritance from the Mohrs to him in Henry Mohr's grandmother's estate; 2) an assignment of a $125,000 life insurance policy on the life of Henry Mohr; 3) a note for $75,000 from the Bishops secured by a deed of trust on the AirCo Tool Building; and, 4) a note for $35,000 secured by a second deed of trust on the Mohr residence which had been assigned to John Bishop.

The note matured on January 31, 1979. Attempts by the bank to secure payment on the note failed, and in July 1979, the bank began foreclosure proceedings on the Mohr residence under a first deed of trust held by the bank. The Mohrs then filed a petition in bankruptcy. Subsequent negotiations between the bank and the Mohrs resulted in releases being prepared and executed by both sides on February 27 and March 2, 1981. In these releases, the Mohrs pledged to dismiss their petition in bankruptcy, transfer the title of their residence to the bank, and pay the bank $2,500 within 15 days after the receipt by them of any inheritance of $2,500 or more from Mr. Mohr's grandmother's estate. The bank, in exchange for those promises by the Mohrs, released the Mohrs from the $115,000 note and two other notes, and also released any interest it may have had against the estate of Henry Mohr's grandmother.

Prior to the execution of the releases, the Bishops were advised by the bank at various times as to the status of its legal proceedings against the Mohrs and the Bishops' liability on the note for any balance it was unable to collect from the Mohrs. The Bishops, however, were not informed by the bank about the possibility of the Mohrs being released from the note, nor were they informed about the releases at the time of the actual execution of the releases. The bank never sought or received the consent of the Bishops to release the Mohrs from the note. Also, the bank never expressly reserved its rights on the note against the Bishops prior to or contemporaneous with the execution of the releases.

The Bishops promptly filed suit for a declaratory judgment that they were no longer obligated on the note, when they eventually discovered that releases had been executed by the bank and the Mohrs. After amending their pleadings, the Bishops moved for summary judgment on count II in which they contended that as comakers they were discharged from obligation on the note under § 400.3–606. In its judgment on count II, the trial court 1) found that the releases executed by the bank and the Mohrs were for the purpose of fully and forever compromising, discharging and releasing all claims of every kind, character, and description; 2) found that the releases were executed without notice to, or the consent of, the Bishops and without an express reservation of rights by the bank against the Bishops; 3) ordered the return or release of the collateral the Bishops had pledged with regard to the note; and 4) sustained the Bishops' motion for summary judgment against the bank on its counterclaim for the balance due on the note.

On appeal, the defendant bank claims that the trial court erred in granting the summary judgment because 1) material facts were at issue on whether the Bishops were comakers or sureties, on whether the Bishops consented to the releases, and on whether the bank expressly reserved its rights; 2) comakers are not covered by

§ 400.3–606; and, 3) it failed to make a finding on the extent of the impairment of the Bishops' right of recourse against the Mohrs on the note, and failed to determine the value of any impaired collateral.

■ Our review of these allegations of trial court error is limited to determining whether the trial court's judgment is supported by substantial evidence, is not against the weight of the evidence, and is a correct declaration or application of law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In applying that standard of review to the bank's first issue, we find that there were no material facts at issue, and that there were only questions as to the legal effect of certain facts upon the question of what was the Bishops' status on the note (comaker, surety, etc.) and upon whether there was consent or an express reservation of rights. We also find, without an extensive review at this point of the facts already presented above, that that part of the trial court's judgment finding that the Bishops were comakers on the note, that there was no consent, and that there was no express reservation of rights satisfies the review standards of *Murphy v. Carron,* supra.

The bank's second issue on appeal regarding the application of § 400.3–606 to comakers raises a novel question of law in Missouri. No other Missouri appellate court has been forced to directly confront the issue of whether § 400.3–606 applies to comakers as well as to sureties and accommodation makers.[2]

Section 400.3–606 provides that:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

(a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

(2) By express reservation of rights against a party with a right of recourse the holder preserves

(a) all his rights against such party as of the time when the instrument was originally due; and

(b) the right of the party to pay the instrument as of that time; and

(c) all rights of such party to recourse against others."

The bank contends that the comments to this section clearly indicate that this defense is available only to "any party" who is an accommodation maker or surety.[3] However, in order for us to reach the bank's conclusion, we would have to violate the ordinary rules of statutory construction.

---

**2.** In *Wirth v. Heavey,* 508 S.W.2d 263, 266 (Mo.App.1974), the Kansas City Court of Appeals refused to discharge a comaker under § 400.3–606 by ruling that even if that section applied to comakers, there had not been a release making that defense available.

**3.** § 400.3–606, V.A.M.S., Missouri Code Comment says that:

"[t]he words 'any party to the instrument' are used to make it clear that the suretyship defenses provided herein are available to any party who is in the position of a surety and not just to parties secondarily liable."

§ 400.3–606, V.A.M.S., Uniform Commercial Code Comment 1 states that:

"The words 'any party to the instrument' remove an uncertainty arising under the original section. The suretyship defenses here provided are not limited to parties who are 'secondarily liable,' but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so."

■ It is well-settled law that in ascertaining the meaning of the statute, we must look to the express language of the law irrespective of what may have been intended. *State ex rel. Degraffenreid v. Keet,* 619 S.W.2d 873, 876 (Mo.App.1981). We cannot alter the plain, ordinary and natural meaning of words used in a statute and we must determine the meaning of the words by applying the plain and natural meaning of the language. *Bethel v. Sunlight Janitor Service,* 551 S.W.2d 616, 619 (Mo. banc 1977). An unambiguous statute should be taken to mean what it says, for the General Assembly is presumed to have intended what the law states directly, and courts have no leave to impose another meaning. *State ex rel. Degraffenreid v. Keet,* supra. We hold that the term "any party" as used in § 400.3–606 means any party to the instrument, including comakers. See *Rushton v. U.M. & M. Credit Corporation,* 245 Ark. 703, 434 S.W.2d 81, 83 (1968); *Deese v. Mobley,* 392 So.2d 364, 368 (Fla.Dist.Ct.App.1981); *Southwest Florida Production Credit Association v. Schirow,* 388 So.2d 338, 339–40 (Fla.Dist.Ct.App. 1980); *Beneficial Finance Co. of New York, Inc. v. Husner,* 82 Misc.2d 550, 369 N.Y.S.2d 975, 977–78 (Sup.Ct. Wayne County 1975); W. Hawkland, Commercial Paper 99, 121 (1959); White & Summers, Uniform Commercial Code, 434 n. 121, § 13–14 (1972).[4] Not only is this result mandated by a plain reading of this unambiguous section, but there are also two other good supporting reasons.

First, this definition is consonant with the definition of "party" listed in the code. See § 400.1–201(29). Second, adopting the bank's construction would result in a different meaning being applied to "any party" in § 400.3–606 compared to the term "any party" used in the remaining discharge sections of 400.3–601 through 400.3–605. We refuse to adopt this incongruity which would result from following the bank's approach.

■ A final argument raised by the bank under this issue is that even if § 400.3–606 applies to the Bishops as comakers, the Bishops are still liable on the note under § 431.150.[5] We find, however, that while § 431.150 was not expressly repealed by § 400.3–606, the § 400.3–606 requirements must be met in a case such as this. Since the bank failed to obtain consent or expressly reserve its rights, it cannot claim any benefit of § 431.150.

The bank's last issue on appeal is that the trial court erred in totally releasing the Bishops as comakers since it failed to place a value on either the Bishops' impaired right of recourse or impaired collateral. The trial court's judgment does not expressly state why it totally released the Bishops. Apparently, the trial court believed that under § 400.3–606(1)(a) the Bishops were totally released from obligation on the note since the bank totally discharged the Mohrs from liability on the note without the consent of the Bishops and without expressly reserving its rights against the Bishops. If this was the trial court's belief, it was wrong.

■ One co-maker's right of contribution from the other comaker is a right of recourse within the meaning of § 400.3–

---

4. We recognize the cases cited by the bank for the position that a comaker is not included as "any party" under U.C.C. 3–606, but those cases ignore the plain, unambiguous meaning of the statute and proceed to look at the U.C.C. Comments. See *United States v. Unum, Inc.,* 658 F.2d 300, 304 (5th Cir.1981); *Wohlhuter v. St. Charles Lumber & Fuel Co.,* 62 Ill.2d 16, 338 N.E.2d 179, 181 (1975); *Farmers State Bank of Oakley v. Cooper,* 227 Kan. 547, 608 P.2d 929, 933–34 (1980); *Peoples Bank of Point Pleasant v. Pied Piper Retreat, Inc.,* W.Va., 209 S.E.2d 573, 578 (1974); *Hooper v. Ryan,* 581 S.W.2d 237, 238–39 (Tex.Civ.App.1979).

5. "It shall be lawful for every creditor of two or more debtors, joint or several, to compound with any and every one or more of his debtors for such sum as he may see fit, and to release him or them from all further liability to him for such indebtedness, without impairing his right to demand and collect the balance of such indebtedness from the other debtor or debtors thereof, and not so released; provided, that no such release shall impair the right of any debtor of such indebtedness, not so released, to have contribution from his co-debtors, as is by law now secured to him." § 431.150.

■

606. See *Beneficial Finance Co. of New York, Inc. v. Husner,* supra, 369 N.Y.S.2d at 978; 3 Anderson, Uniform Commercial Code 128, § 3–606:5 (2d ed. 1971 & Cum. Supp.1982). The release of one comaker under § 400.3–606(1)(a) discharges the other comaker to the extent of only one-half the liability on the note since one comaker would have the right of recourse against the other comaker for only one-half the note. *Deese v. Mobley,* supra; *Provident Bank v. Gast,* 57 Ohio St.2d 102, 368 N.E.2d 1357, 1360–61 n. 4 (1979); White & Summers, supra. This result is in accord with our case law which recognizes that comakers of a promissory note are equally liable. *Wright v. Wright,* 567 S.W.2d 371, 374 (Mo. App.1978). Also, when a release is executed on an instrument covered by the Uniform Commercial Code and that release has the consent of the other comaker or contains an express reservation of rights against the other comaker, §§ 400.3–606(1)(a), (2)(c) and 431.150 operate to preserve the right of the other comaker for payment from the released comaker of any sum paid by the other comaker which exceeds his one-half liability on the note. But when such a release is executed without consent or express reservation of rights, as in the case at bar, §§ 400.3–606(1)(a) and 431.150 operate to discharge the other comaker's liability to the extent of one-half the note since that was the amount of recourse against the discharged comaker that the other comaker had if consent had been obtained or rights had been expressly reserved. See §§ 400.3–606(1)(a), 431.150. We hold that that part of the trial court's judgment which totally released the Bishops from liability on the note under § 400.-3–606(1)(a) was an erroneous declaration and application of the law and we therefore reverse it.

We need not address the valuation problem raised by the bank under § 400.3–606(1)(b) in great detail now since the trial court failed to expressly grant its judgment on that ground and since it failed to place a value on any impaired collateral. It suffices to say that the Bishops, being only half liable on the note under § 400.3–606(1)(a), are also entitled to be discharged from their remaining liability on the note to the extent of the value of any impaired collateral under § 400.3–606(1)(b). We remand the case for a determination by the trial court of the value of any impaired collateral, and a determination of the Bishops' remaining liability, if any, on the note once the value of one-half the note and of any impaired collateral are subtracted from the amount due on the note.

That part of the judgment which found the Bishops, as comakers, to be totally discharged under § 400.3–606(1)(a) from liability on the note is reversed, and the cause is remanded for the trial court to determine the Bishops' liability on the note for one-half the note minus the value of any impaired collateral as found by the trial court on remand. We recognize that this will involve the trial court hearing additional testimony. In all other respects, the judgment of the trial court is affirmed.

TITUS and CROW, JJ., concur.

FLANIGAN, P.J., recused.