FEDERAL LAND BANK OF LOUISVILLE, APPELLANT, *v.* TAGGART ET AL.; BAILEY, APPELLEE.

[Cite as Federal Land Bank of Louisville *v.* Taggart (1987), 31 Ohio St. 3d 8.]

(No. 86-1355—Decided May 27, 1987.)

*Hite & Hite* and *F. Richard Heath,* for appellant.
*J. Boyd Binning,* for appellee.

HOLMES, J. The court of appeals determined that when a lending institution grants an extension of time to make payment to the primary obligor of a promissory note, which is secured by a mortgage, but does not otherwise involve the surety on the note, such surety is discharged by operation of R.C. 1303.01 *et seq.* (UCC Article 3), as adopted by the

General Assembly. In this instance, for the reasons set forth hereinafter, we conclude otherwise, and accordingly reverse.

Appellee's principal argument, relied upon by the court of appeals, derives from R.C. 1303.72(A) (UCC 3-606[1]), which states:

"Impairment of Recourse or of Collateral.

"(A)   The holder discharges any party of the instrument to the extent that without such party's consent the holder:

"(1)   without express reservation of rights * * * agrees to suspend the right to enforce against such person the instrument or collateral * * *; or

"(2)   unjustifiably *impairs any collateral* for the instrument given by or on behalf of the party or any persons against whom he has a right of recourse." (Emphasis added.)

In order to assert the defenses of UCC Article 3, the transaction must be governed thereby. The instrument must be a negotiable instrument as set forth in R.C. 1303.03 (UCC 3-104).[2] Although there is disagreement as to the capacity in which appellee signed, there is no disagreement among the parties in the present case that the promissory note is "signed by the maker," *i.e.,* the Taggarts. Also in the case *sub judice,* the promissory note names appellant as payee and was negotiated to appellant by the maker, pursuant to delivery. Consequently, the promissory note is a negotiable instrument and appellant is a holder in due course, satisfying R.C. 1303.23 (UCC 3-202), all requirements of R.C. 1303.03 (UCC 3-104) and R.C. 1303.31 (UCC 3-302).

As to the issue of the appellee's status on the particular instrument here, his signature appears upon the promissory note, but not on the mortgage. His signature on the note is located on the next line under the two signatures of the Taggarts. Without more, it could be reasonably argued that he signed such either as a co-maker, or as an accommodation maker.[3] If the former, he would be generally thought to be primarily liable, jointly and severally with the maker, and generally without recourse,[4] but if the

---

[2] R.C. 1303.03 (UCC 3-104) provides:

"(A)   Any writing to be a negotiable instrument within sections 1303.01 to 1303.78, inclusive, of the Revised Code, must:

"(1)   be signed by the maker or drawer; and

"(2)   contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by sections 1303.01 to 1303.78, inclusive, of the Revised Code; and

"(3)   be payable on demand or at a definite time; and

"(4)   be payable to order or to bearer."

[3] Another kind of obligor would be one who signed as a guarantor on the instrument. There is no assertion by the parties that appellee signed as a guarantor, nor could there be. Such capacity is customarily evidenced by words of guaranty or an entirely separate writing, and permits the holder to proceed directly against such guarantor upon default of the maker, without presentment of the paper to, or demand upon, the primary party (maker). R.C. 1303.52 (UCC 3-416[5]).

[4] However, Official Comment 1 to R.C. 1303.72 (UCC 3-606) states that: "* * * The

latter, he has recourse to all the applicable defenses codified in the Uniform Commercial Code, particularly R.C. 1303.72(A)(1) (UCC 3-606[1][A]).

Land Bank asserts that appellee signed as a co-maker rather than surety on the note, pointing out that the appellee received the proceeds of the loan for his signature to accommodate the sale of his property, thus asserting the primary benefit to, and liability of, the appellee. See *Wohlhuter* v. *St. Charles Lumber & Fuel Co.* (1975), 62 Ill. 2d 16, 338 N.E. 2d 179, wherein such view was adopted.

Appellee asserts that he signed the note as a surety, purely as an accommodation to the maker, and as such is only secondarily liable and may assert the defenses available to him as here alleged.

Based upon all the facts presented herein, we hold that the appellee is an accommodation party as defined in R.C. 1303.51 (UCC 3-415) and, more particularly, a surety. An accommodation party is one who signs the instrument "for the purpose of lending his name to another party to it." R.C. 1303.51(A) (UCC 3-415[1]). An accommodation maker is not liable to the party accommodated (6 Anderson, Uniform Commercial Code [1984] 363, Section 3-415:37), but is liable to the holder "[i]n the capacity in which he [the accommodation party] signed." *Id.* at 363, Section 3-415:36; R.C. 1303.51(B) (UCC 3-415[2]).

One asserting accommodation status has the burden of proving it. *Id.* at 349, Section 3-415:12. Proof may be through demonstration of an express agreement with the party accommodated that such party was to be primarily liable. An agreement may also be implied from the facts and circumstances connected with the transaction and the parties to it. See, *e.g.,*

---

suretyship defenses here provided are not limited to parties who are 'secondarily liable,' but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it * * *." See, *e.g.,* Note, Suretyship in Article 3 of the Uniform Commercial Code (1965), 17 Case W. Res. L. Rev. 318.

In the same vein, in *Provident Bank* v. *Gast* (1979), 57 Ohio St. 2d 102, 11 O.O. 3d 284, 386 N.E. 2d 1357, this court expressly adopted the position that co-guarantors may assert the above defenses, and be discharged to the extent of their right to contribution from co-guarantors released, and at 106, 11 O.O. 3d at 286, 386 N.E. 2d at 1359, specifically relied upon the above Official Comment. In *Gast, supra,* the asserted rationale reasonably encompasses co-makers on the note who, while not having a right of subrogation to the holder's rights under the promissory note, are nonetheless entitled to recover any amount which they pay in excess of their proportionate share through the right of contribution. See, generally, 18 Ohio Jurisprudence 3d (1980) 349, Contribution, Indemnity, and Subrogation.

Furthermore, it is the generally accepted view that co-makers as well as accommodation makers may assert the "impairment of recourse or collateral" defenses. See 4 Hawkland & Lawrence, Uniform Commercial Code Series (1984) 702, Section 3-415:03; 6 Anderson, Uniform Commercial Code (3 Ed. 1984) 563, Section 3-606:4; Annotation, Who is "Party" Discharged on Negotiable Instrument to Extent of Holder's Unjustifiable Impairment of Collateral, Under UCC § 3-606(1)(b) (1979), 93 A.L.R. 3d 1283, 1284, and 1986 Supplement thereto. Also there are a number of situations wherein a co-maker might also qualify as an accommodation party. See, *e.g.,* Annotation, Who is Accommodation Party Under Uniform Commercial Code § 3-415 (1979), 90 A.L.R. 3d 342, 354, Section 6(a).

Annotation (1979), 90 A.L.R. 3d 342, 347, Section 2; 4 Hawkland & Lawrence, Uniform Commercial Code Series (1984) 702, Section 3-415:03. Herein, appellee was the seller of real property who signed the promissory note to enable the purchasers to obtain the loan from appellant for the purchase price. The Taggarts, as purchasers, obtained title to the property, and gave back a mortgage to the bank wherein they alone are the mortgagors. The only reasonable implication is that the purchasers were primarily liable, and that appellee signed merely for the purpose of lending his name. See 4 Hawkland & Lawrence, *supra,* Section 3-415:03; *Maine Natl. Bank* v. *Fontaine* (Me. 1983), 456 A. 2d 1273; Peters, Suretyship under Article 3 of the Uniform Commercial Code (1968), 77 Yale L.J. 833. See, also, 6 Anderson, *supra,* at 352-353, Section 3-415:18 and cases collected at fn. 4. Therefore, had appellee paid the amount of the note to the holder, he would have been "subrogated to the rights of the holder paid." Official Comment 5 to R.C. 1303.51(E) (UCC 3-415[5]). Such rights would ordinarily have included the holder's rights on the instrument as well as recourse to the collateral for the full amount paid. 6 Anderson, *supra,* at 364-365, Sections 3-415:40 and 3-415:42; 4 Hawkland & Lawrence, *supra,* at 720, Section 3-415:13.

Possessing the latent right of recourse against the accommodated party, *i.e.,* subrogation, appellee may be entitled to a discharge of his obligation to the holder if it can be demonstrated that the holder impaired appellee's potential for recourse against either the accommodated party or the collateral given. R.C. 1303.72 (UCC 3-606). See, also, 4 Hawkland & Lawrence, *supra,* at 701, Section 3-415:02; 6 Anderson, *supra,* at 559, Section 3-606 *et seq.; Bank of New Jersey* v. *Pulini* (1984), 194 N.J. Super. 163, 476 A. 2d 797; *Binford* v. *L. W. Lichtenberger Estate* (1983), 62 Ore. App. 439, 660 P. 2d 1077.

Impairment is not limited to physical impairment, but includes conduct by the holder which diminishes the value of the collateral, or which makes it unavailable to the surety. Where the holder grants an extension, without the consent of the party affected, an impairment of collateral may occur. See, *e.g.,* 6 Anderson, *supra,* at 572, Section 3-606:15, and cases collected in fn. 19; 11 American Jurisprudence 2d (1963), Bills and Notes, Sections 942-947; see, generally, Annotation, What Constitutes Unjustifiable Impairment of Collateral, Discharging Parties to Negotiable Instrument, Under UCC § 3-606(1)(b) (1979), 95 A.L.R. 3d 962.

Appellee contends that Land Bank's decision to extend the time for making payment by over one year allowed the collateral to decline in value to the extent that it would no longer be worth the amount owed on the promissory note. Also, appellee asserts that he did not consent to the extension and was not notified either that the Taggarts were behind in their payments, or that an extension was granted.

It is axiomatic that a party cannot assert a discharge by release under R.C. 1303.72(A)(1) (UCC 3-606[1][a]), when he has consented to the con-

duct which he thereafter claims was effective to discharge his liability. 6 Anderson, *supra,* at 566, Section 3-606:8. Official Comment 2 to R.C. 1303.72 (UCC 3-606) states, in definite terms that: "Consent may be given in advance, and is commonly incorporated in the instrument * * *. It requires no consideration, and operates as a waiver of the consenting party's right to claim his own discharge." See, also, 6 Anderson, *supra,* at 566, Section 3-606:8. Consequently, appellee's argument runs aground upon the terms of the promissory note which he agreed to be bound by, which note states, in pertinent part: "The drawers and endorsers, and all parties to this instrument, severally waive presentment for payment, protest, notice of protest, *notice of non-payment* of this instrument, demand and all legal diligence in enforcing collection. *The right is expressly reserved to the holder hereof to extend the time of payment of this instrument or of any installment* herein provided." (Emphasis added.)

After a careful review of the language used, we conclude that a reservation of the bank's right to extend the time of payment and waiver of notice of non-payment is clearly set forth within the instrument. Because appellee consented to the extension, any decrease in the value of the collateral which may have resulted from the bank's exercise of its reserved right to extend the time of payment cannot be the basis of an impairment of collateral discharge in the present case.[5]

Appellee also contends that the extension of time for payment was granted with no reservation of rights against appellee. R.C. 1303.72(A)(1) (UCC 3-606[1][a]). While the face of the instrument makes it clear that all rights to proceed against the parties on the promissory note were reserved, we need not evaluate the issue since, even generalizing that the extension for payment would work a release of the parties accommodated, here appellee fully consented to the extension and is precluded from claiming release predicated upon such extension. 6 Anderson, *supra,* at Section 3-606:8.

Finally, appellee asserts that the extension constituted a new agreement intended to substitute for the promissory note. This he bases upon terms within the Reamortization Agreement which added principal, increased the amount of interest owed, and changed the date of payment. The court of appeals found these terms to constitute such new loan.

The above theory is essentially one of novation. Ordinarily, "* * * a novation discharges the nonsigning joint maker from liability on the original note * * *." Annotation, Renewal Note Signed by One Comaker as Discharge of Nonsigning Comakers (1972), 43 A.L.R. 3d 246, 252. However, in order for such discharge to be effected, appellee must meet

---

[5] Appellee proffered at trial that in May 1983 the farm was worth $180,000, but declined during the next year so that in May 1984 it was worth about $160,000. However, there is reasonable doubt as to the declination of value of the property here in that the property was sold at the sheriff's sale in January 1986 for $185,200.

the usual requirements for novations found in contract law. The crucial requirement, in the present case, is that "there must be * * * a mutual agreement between the creditor and his debtor which is intended to extinguish the old obligation by substituting a new one therefor. Thus * * * for an obligation * * * to have the effect of discharging the liability on the prior note, the new note must be given with that understanding on the part of both * * *." *Id.* at 252-253. See, also, cases collected in Section 6 of 43 A.L.R. 3d, *supra,* at 260-262; 18 Ohio Jurisprudence 3d (1980) 204, Contracts, Sections 283-296; 58 American Jurisprudence 2d (1971) 515, Novation.

It is apparent that the Reamortization Agreement was not intended as a substitution for the original note, but was instead an ordinary rescheduling of a late debt. The instrument declares that "the loan be reamortized." In the upper right-hand corner, in the space labeled "Loan Number," is the number 327477-10, which is the promissory note number appearing at the top left corner of the original note. Within its various subparts, the Reamortization Agreement states: "(b) The agreements, covenants and conditions *of the note* and mortgage *shall remain in full force and effect* * * *. (d) The validity, priority and enforceability of the mortgage *or note* shall not be impaired hereby; * * *" (Emphasis added.)

The Reamortization Agreement created additional debt for the Taggarts "in consideration of the Bank's forbearance from the exercise of the options and remedies available to it under *the terms of its note* * * *." (Emphasis added.) Furthermore, the right to vary the interest charged or to grant an extension was expressly reserved to Land Bank under the promissory note. In any event, the agreement by the Taggarts to assume greater debt should have no effect upon appellee in that the bank does not seek to collect the additional debt from appellee, who did not agree to it, but has proceeded only upon the original note. Such agreement hardly rises to the level of a novation.

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., SWEENEY, LOCHER, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.