BUCKEYE FEDERAL SAVINGS & LOAN ASSOCIATION, N.K.A. BANCOHIO NATIONAL BANK, APPELLANT, *v.* GUIRLINGER, APPELLEE.

[Cite as *Buckeye Fed. S. & L. Assn. v. Guirlinger*
(1991), 62 Ohio St.3d 312.]

(No. 90–1527—Submitted September 17, 1991—Decided December 31, 1991.)

*Schwartz, Kelm, Warren & Rubenstein, Daniel R. Swetnam* and *John A. Gleason,* for appellant.

*Clark, Perdue & Roberts Co., L.P.A., Douglas S. Roberts* and *Glen R. Pritchard,* for appellee.

*Vorys, Sater, Seymour & Pease* and *Steven W. Mershon,* Columbus, for *amicus curiae* Ohio Savings and Loan League.

SMART, J.  This cause presents two issues for our review:  whether a creditor not in possession of collateral can be held liable for its unjustified impairment, and whether Guirlinger waived the defense of impairment of collateral against Buckeye Federal.  For the reasons that follow, we reverse the decision of the court of appeals and reinstate the decision of the trial court.

## I

In order to prevail on his Civ.R. 60(B) motion for relief from judgment, Guirlinger had to demonstrate that he had a meritorious defense, that his motion was timely, and that he was entitled to relief on one of the five grounds stated in the rule.  *GTE Automatic Electric, Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 150, 1 O.O.3d 86, 88, 351 N.E.2d 113, 116.

The defense Guirlinger raised was available at common law, see *Goodman v. Goodman* (1933), 127 Ohio St. 223, 187 N.E. 777, and has been codified in the Uniform Commercial Code, UCC 3–606, R.C. 1303.72(A)(2), as follows:

"(A) The holder discharges any party to the instrument to the extent that without such party's consent the holder:

" * * *

"(2) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

As the appellate court correctly noted, the promissory notes are negotiable instruments under R.C. 1303.03(A),[1] but the separate guarantee agreements at issue here are not.

However, because the promissory note anticipates and defines some of the rights of the suretyship, the Revised Code provisions do apply to the guarantee agreements.

## II

Buckeye Federal cites several cases supporting the proposition that a creditor must be in possession of the collateral in order to be responsible for its unjustified impairment, including *BancOhio Natl. Bank v. Troyer* (Mar. 18, 1987), Tuscarawas App. No. 86AP060043, unreported, 1987 WL 9097; *Commercial Credit Equip. Corp. v. Hatton* (N.D.Tex.1977), 429 F.Supp. 997; *Moore v. Luxor (North America) Corp.* (1988), 294 Ark. 326, 742 S.W.2d 916.

We find that the most equitable and commonsense approach is to require the party in possession of the collateral to carry the responsibility to conserve it. Public policy will not be served by requiring a creditor out of possession to supervise and, probably, second-guess the debtor or the guarantor in its handling of the collateral in its rightful possession. We hold, therefore, that a creditor not in possession of collateral cannot be liable for its unjustified impairment.

The trial court was correct in holding that Buckeye Federal had no duty to monitor the collateral that Cardinal was equipped to administer.

---

1. R.C. 1303.03 provides as follows:

"(A) Any writing to be a negotiable instrument within sections 1303.01 to 1303.78, inclusive, of the Revised Code, must:

"(1) be signed by the maker or drawer; and

"(2) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by sections 1303.01 to 1303.78, inclusive, of the Revised Code; and

"(3) be payable on demand or at a definite time; and

"(4) be payable to order or to bearer.

"(B) A writing which complies with the requirements of this section is:

"(1) a 'draft' ('bill of exchange') if it is an order;

"(2) a 'check' if it is a draft drawn on a bank and payable on demand;

"(3) a 'certificate of deposit' if it is an acknowledgment by a bank of receipt of money with an engagement to repay it;

"(4) a 'note' if it is a promise other than a certificate of deposit."

## III

The issue of waiver was raised before the trial court. Because the trial court ruled that the defense of impairment of collateral was not available, it found it unnecessary to address the question of whether Guirlinger had waived the defense. The court of appeals declined to consider the issue, although it was presented. We find that the court of appeals could have determined the issue of waiver, and we may also do so. *Lehman v. Haynam* (1956), 164 Ohio St. 595, 59 O.O. 5, 133 N.E.2d 97.

We find that Guirlinger did not allege sufficient facts in his motion to give rise to the claimed defense, and further find that the guarantee agreement speaks for itself on the issue of impairment of collateral. The record contains an ample basis for the trial court's overruling of the motion for relief from judgment.

The guarantee agreements expressly state that Guirlinger waived his right to any defense based upon Buckeye Federal's delay in asserting its rights under the notes.[2]

---

2. The guarantee of the loan to Detroit West stated as follows:

"* * *

"4. [Guarantors] [u]nconditionally, absolutely and irrevocably agree that from time to time, before or after any default by Borrower, with or without further notice to or assent from Guarantors, any security at any time held by or available to Lender from any obligation of Borrower, or any security at any time held by or available to Lender for any obligation of any other person or party secondarily or otherwise liable for all or any portion of the Loan, may be exchanged, surrendered or released and any obligation of Borrower, or of any such other person or party, may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part, or any default with respect thereto waived, and Lender may fail to set off and may release, in whole or in part, any balance of any deposit account or credit on its books in favor of Borrower, or of any such other person or party, and may extend further credit in any manner whatsoever to Borrower, and generally deal with Borrower or any such security or other person or party as Lender may see fit; and Guarantors shall remain bound under this Guaranty notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing whether material or otherwise.

"* * *

"8. This is a guaranty of payment and not of collection and Guarantors unconditionally, absolutely and irrevocably (i) waive all suretyship and other similar defenses, [and] (ii) waive any right to require that any action be first brought against Borrower or any other person or party or to require that resort be had to any security or to any balance of any deposit or credit on the books of Lender in favor of Borrower or any other person or party * * *.

"* * *

"12. No delay on the part of Lender in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on Guarantors shall be deemed to be a waiver of the obligations of Guarantors or of the right of Lender to take further action without notice or demand as provided herein; nor in any event shall any

In *Fed. Land Bank of Louisville v. Taggart* (1987), 31 Ohio St.3d 8, 31 OBR 6, 508 N.E.2d 152, this court held at paragraph two of the syllabus:

"A decrease in the value of collateral resulting from the lender's extension of the time for making payment on a promissory note cannot, even if proven, be the basis for an impairment of collateral discharge when, by advance consent, the accommodation party agreed to allow such extensions."

Although *Taggart* dealt with an accommodation maker, not, as here, a guarantor, *Taggart*'s rationale is equally persuasive here.

In *Taggart*, the promissory note stated expressly that the accommodation party waived "all legal diligence in enforcing collection" and expressly reserved to the holder the right to extend the time of payment. *Id.* at 8, 31 OBR at 7, 508 N.E.2d at 154. By contrast, in the instant case, Guirlinger's defense is predicated upon the proposition that Buckeye Federal knew or should have known that the fair market value of the property was decreasing. Guirlinger, the chief executive officer of Cardinal, the corporation that administered the property, was in a far better position to know that at the time he was expressly requesting extension of time, the value of the property was diminishing. We hold that Guirlinger cannot claim foul in Buckeye Federal's actions when he himself had not merely acquiesced in but actively encouraged those actions. In *Taggart* the accommodation maker had consented in advance and was not even aware of a reamortization agreement, and yet was not allowed a discharge on the basis of impairment of collateral.

Guirlinger asserts that Buckeye Federal slept on its rights in not calling the loan some two years before it did, even though the payments on the note were then current. R.C. 1303.72(A)(2) refers to unjustifiable impairment of the collateral. A holder is justified in not calling a note, even if he is able to do so, when the payments on that note are current. Further, Guirlinger was presumably aware of the steady deterioration of the property when he requested an extension of time, and so he must be estopped from asserting that Buckeye Federal's prior delay was unjustified in light of his express request for further delay. The uncontroverted facts in the record gave rise to the conclusion that, even if Guirlinger did not actually induce the delay that produced his alleged damages, he ratified it. Particularly given the relationship of the debtors, the managers of the property, and the guarantor here, we find that both law and equity require the conclusion that Guirlinger waived the defense of impairment of collateral.

---

modifiction [*sic*] or waiver of the provisions of this Guaranty be effective unless in writing nor shall any such waiver be applicable except in the specific instance for which given."

The guarantee of the loan to Lansing had provisions which were identical except for language consistent with one guarantor instead of two.

For the foregoing reasons, we reverse the judgment on the court of appeals, and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., HOLMES, WRIGHT and PATTON, JJ., concur.

SWEENEY and DOUGLAS, JJ., dissent.

JOHN T. PATTON, J., of the Eighth Appellate District, sitting for H. BROWN, J.

IRENE B. SMART, J., of the Fifth Appellate District, sitting for RESNICK, J.