## SOMERSET SYNFUEL NO. 1, L.L.C.,

### v.

## RESOURCE RECOVERY INTERNATIONAL
### CORP., Appellant and Cross–Appellee;

### Thomson, Appellee and Cross–Appellant.

[Cite as *Somerset Synfuel No. 1, L.L.C. v. Resource Recovery Internatl. Corp.,* 188 Ohio App.3d 368, 2010-Ohio-3463.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2009–T–0037.

Decided July 23, 2010.

Blair & Latell Co., L.P.A., and Matthew J. Blair, for appellant and cross-appellee.

Pelini, Campbell, Williams & Traub, L.L.C., and Craig G. Pelini; and McGuire Woods, L.L.P., Erin Fischer Action, and Gregg M. Rosen, for appellee and cross-appellant.

MARY JANE TRAPP, Presiding Judge.

{¶ 1} Resource Recovery International Corporation appeals the judgment of the Trumbull County Court of Common Pleas awarding attorney fees and interest to Norman Thomson in a debt-collection case. Thomson cross-appeals, challenging the rate of interest awarded to him on the judgment. For the following reasons, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

{¶ 2} *Substantive Facts and Procedural History*

{¶ 3} In 1996, Thomson sold certain companies he owned, including Thomson Recovery Corporation, to Resource Recovery International. Resource Recovery International failed to pay the purchase price. Thomson filed suit against Resource Recovery and obtained a judgment in the amount of $1,275,000, plus accrued interest at the rate of ten percent per annum starting June 29, 1999.

{¶ 4} In August 2002, Thomson and Resource Recovery International entered an agreement of accord and release to settle the judgment, and Resource Recovery executed a promissory note in Thomson's favor in the amount of $1,676,714.40, plus interest at the rate of ten percent per annum. As part of the agreement, an irrevocable order to pay was issued to Somerset Synfuel No. 1, L.L.C., requiring it to direct a portion of its quarterly payments owed to Resource Recovery International, as part of an alternative fuel tax-credit program under former Section 29 of the Internal Revenue Code, to Thomson in satisfaction of the note.

{¶ 5} In 2004, Somerset Synfuel suspended the production of synthetic fuels and, as a result, ceased payments to Resource Recovery International and Thomson. Pursuant to the terms of the agreement, Thomson declared the note in default, accelerated the balance due, and demanded payment from Resource Recovery International.

{¶ 6} In 2005, Somerset Synfuel resumed production and was able to resume payments. According to Thomson's testimony, he and Resource Recovery International entered into a verbal forbearance agreement. Pursuant to the terms of this agreement, Thomson would forbear from accelerating the amount due under the note. In exchange, (1) Somerset Synfuel would make a distribution of $250,000 to Thomson from available funds, (2) Resource Recovery International would resume quarterly payments under the note, and (3) Thomson Recovery Corporation, a subsidiary of Resource Recovery International, would transfer certain real property and equipment to Thomson. Resource Recovery International disputed the existence of the forbearance agreement and did not comply with the terms of the agreement.

{¶ 7} On January 31, 2006, Somerset Synfuel No. 1, L.L.C., filed a complaint for interpleader and declaratory relief against Resource Recovery International and Thomson. Somerset Synfuel alleged that it had deposited with the court the sum of $245,092, and the funds were "available for distribution" to Thomson and Resource Recovery International. Somerset Synfuel alleged, however, that it was in "great doubt" as to the relative merit of the defendants' claims to these funds.

{¶ 8} On March 1, 2006, Thomson filed his answer and cross-claim against Resource Recovery International, for claims of breach of contract, detrimental reliance, and promissory estoppel.

{¶ 9} On March 31, 2006, the court adopted a joint stipulation of the parties, releasing $127,092 of the $245,092 deposited with the court to Resource Recovery International. The remaining $118,000 remained on deposit with the court, and the parties were permitted to proceed against each other for the balance of the interpleaded funds.

{¶ 10} On May 1, 2006, Resource Recovery International filed its answer and cross-claim against Thomson for breach of contract and mistake.

{¶ 11} On June 7, 2006, Somerset Synfuel was dismissed as a party from the suit. On July 2, 2007, and August 20, 2007, Thomson and Resource Recovery International's claims were tried before the court.

{¶ 12} On May 6, 2008, Thomson filed a supplementary petition for fees and costs.

{¶ 13} On April 23, 2009, the trial court issued its judgment entry. The trial court determined that the alleged forbearance agreement was not valid, inasmuch as there was no "meeting of the minds" between Thomson and Resource Recovery International. The court found, furthermore, that even assuming that the agreement did exist, the agreement could not have modified the terms of the note, which required any modifications to be in writing.

{¶ 14} The court found that under the terms of the note, Thomson was entitled to recover reasonable attorney and accounting fees. Thus, the court awarded him (1) $117,594.17 in principal and interest due under the note, (2) $28.43 in per diem interest under the note from May 1, 2008, to the date of the judgment entry, (3) $214,973.74 in attorney fees and costs accrued by Thomson in the instant litigation, and (4) $8,057.12 in accounting fees accrued by him.

{¶ 15} On April 29, 2009, Resource Recovery International filed its notice of appeal. On May 22, 2009, Thomson filed his notice of cross-appeal.[1]

{¶ 16} On appeal, Resource Recovery International raises the following assignments of error:

{¶ 17} "[1.] The trial court erred to the prejudice of Defendant–Appellant/Cross–Appellee in awarding attorneys' fees to Defendant–Appellee/Cross–Appellant Norman Thomson.

{¶ 18} "[2.] The trial court erred to the prejudice of Defendant–Appellant/Cross–Appellee in awarding the totality of accrued attorneys' fees to Defendant–Appellee/Cross–Appellant Norman Thomson rather than delineating the fees incurred throughout litigation and only awarding those for non-duplicative efforts reasonably expended to 'enforce the Note' pursuant to Section 12(e) of the Note."

{¶ 19} On cross-appeal, Thomson raises the following assignments of error:

{¶ 20} "[1.] The trial court erred to the prejudice of Mr. Thomson in failing to award him the Contractual interest rate in the April 23, 2009 Judgment Entry and the August 18, 2009 Corrective Judgment Entry.

{¶ 21} "[2.] The trial court erred to the prejudice of Mr. Thomson in ruling that the $400,000 on deposit with the Clerk of Courts is an adequate supersedeas bond."

{¶ 22} *Attorney Fees*

---

1. On May 26, 2009, the trial court issued a "judgment staying enforcement of judgment during appeal and approving funds on deposit as security/supersedeas bond." In addition to staying the enforcement of its April 23, 2009 judgment entry, the court ordered the clerk of courts to hold $400,000 already deposited with her as security for enforcement of its April 23, 2009 judgment in the event of affirmance upon appeal.

■ {¶ 23} In its first assignment of error, Resource Recovery International claims that the trial court erred in awarding attorney fees in this case. It claims that several months before Somerset Synfuel filed the instant suit, Resource Recovery International had executed a final pay order, directing Somerset Synfuel to distribute to Thomson payment in full under the note. Resource Recovery International maintains that had Thomson accepted payment pursuant to the terms of the final pay order, the note would have been satisfied in full, and the present litigation and its attendant costs would have been avoided.

{¶ 24} Our review of the record does not support Resource Recovery International's contention. The record reflects that on December 21, 2005, attorney Dwight A. Howes sent a letter on behalf of Thomson to attorney William L. Caplan, representing Resource Recovery International. The letter states that Resource Recovery International is "in default of its obligations to Mr. Thomson" and is on notice "to pay the outstanding amount of [its] obligation to Mr. Thomson," that amount being $175,205.65 plus the daily interest accrual of $45.13 as of the date of the letter.

{¶ 25} On January 9, 2006, Edward C. Kane, President and CEO of Resource Recovery International, issued a final pay order to Somerset Synfuel "to pay Norman Thomson the amount of $175,205.65 plus a $45.13 per diem interest amount multiplied by the number of days from December 21, 2005." The final pay order also contained a provision that it "constitutes payment in full and complete satisfaction of all obligations to Thomson arising under the Release, the Promissory Note, the Security Agreement, and the Irrevocably [sic] Pay Order that were made part of the AGREEMENT OF ACCORD AND RELEASE entered into by the parties on August 23rd, 2002." (Capitalization sic.) Thomson refused payment. As explained in an e-mail from attorney Howes to attorney Caplan, the "full and complete satisfaction" provision "is unacceptable to Mr. Thomson because [Resource Recovery] has failed to honor the terms of its agreement to cure a previous default under the Agreement." As explained in Thomson's answer to Resource Recovery's cross-claim, the payment of $175,205.65 plus $45.13 per diem interest did *not* constitute a full and complete satisfaction of Resource Recovery's obligations. Thomson testified to this effect at the hearing.

{¶ 26} Significantly, there was no evidence presented that $175,205.65 plus $45.13 per diem interest was the full amount owed by Resource Recovery International to Thomson as of January 2006. In its judgment entry, the trial court made no finding on this issue. In the absence of such evidence and/or a specific finding by the trial court, the court did not abuse its discretion in awarding attorney fees to Thomson despite his refusal to accept payment under the final pay order. The first assignment is without merit.

{¶ 27} Under its second assignment of error, Resource Recovery International makes several claims. First, it maintains that in the event this court finds attorney fees are proper in this case, only the portion of the fees incurred to enforce the note should be awarded. We agree with this contention.

{¶ 28} " 'As a general rule, the costs and expenses of litigation, other than the usual court costs, are not recoverable in actions for damages, and ordinarily no attorney fees are allowed.' " *Freeman v. Crown City Mining, Inc.* (1993), 90 Ohio App.3d 546, 552, 630 N.E.2d 19, quoting *Vinci v. Ceraolo* (1992), 79 Ohio App.3d 640, 649, 607 N.E.2d 1079.

{¶ 29} "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.,* 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7, citing *Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 33–34, 514 N.E.2d 702. "However, there are exceptions to this rule. Attorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees." Id., citing *Nottingdale* at 34, 514 N.E.2d 702.

{¶ 30} R.C. 1301.21(B) authorizes the award of attorney fees regarding contracts of indebtedness. It states: "If a contract of indebtedness includes a commitment to pay attorneys' fees, and if the contract is enforced through judicial proceedings or otherwise after maturity of the debt, a person that has the right to recover attorneys' fees under the commitment, at the option of that person, may recover attorneys' fees in accordance with the commitment * * *."

{¶ 31} In this case, after Somerset Synfuel suspended production in 2004 and ceased payments to Thomson, he declared the note in default, accelerated the balance due, and demanded payment from Resource Recovery International. In 2005, Somerset Synfuel resumed production and payments to Thomson, who then attempted to negotiate a settlement and allegedly entered into a verbal forbearance agreement with Resource Recovery International. Under this agreement, Thomson would forbear accelerating the amount due under the note in exchange for (1) a $250,000 distribution from Somerset Synfuel, (2) resumed quarterly payments from Resource Recovery International under the note, and (3) the transfer of certain equipment and real property to Thomson from a subsidiary of Resource Recovery International.

{¶ 32} Section 12(e) of the note provides: "Maker [Resource Recovery International] shall pay to Payee [Thomson], upon demand, any and all expenses, including legal expenses and reasonable attorneys' fees, incurred or paid by Payee *in enforcing this note* * * *." (Emphasis added.)

{¶ 33} Under these facts, an award for attorney fees for *enforcing the note* is authorized by R.C. 1301.21, as well as specifically provided for under the note. As the note was successfully enforced, Thomson is entitled to attorney fees incurred in its enforcement.

{¶ 34} However, the alleged forbearance agreement, as *a settlement agreement*, constituted a new contract. The forbearance agreement was an attempted settlement intended to *replace* the parties' original obligations under the note. Thus, a new contract was being created. See *Kingsborough v. Edwards* (June 29, 1994), Summit App. No. 16565, 1994 WL 286075, *1 ("As applied to contracts, the doctrines of accord and satisfaction, compromise and settlement, and novation generally arise in cases involving a disputed claim between parties who stand in a creditor-debtor relationship. * * * In the usual case, the creditor releases the debtor from further liability under the original contract in exchange for the debtor providing some form of substitute performance. The end result is the creation of a new contract between the parties * * *").

{¶ 35} There was no specific provision for attorney fees under the alleged forbearance agreement. Moreover, Thomson's attorneys' efforts to enforce his claim under the agreement through judicial proceedings *failed.*

{¶ 36} Thus, Thomson is not entitled to attorney fees attributable to the failed attempt to enforce the verbal forbearance agreement, inasmuch as the verbal forbearance agreement was a separate and new agreement, and Thomson was not the prevailing party on that claim.

{¶ 37} Accordingly, his attorneys' time and efforts litigating his claim under the alleged forbearance agreement should be separated from those litigating his claim under the original note, and only the latter should be awarded. We recognize that this task is not easy. It would require the trial court to hold an evidentiary hearing upon remand to subtract from the award of attorney fees the hours expended in the unsuccessful attempt to enforce the forbearance agreement. The portion of the second assignment of error relating to this claim is sustained.

{¶ 38} In addition, Resource Recovery International complains that litigation expenses were unnecessarily increased by Thomson's being represented by two law firms—McGuire and Woods, located in Pittsburgh, Pennsylvania, and Pelini & Associates, located in North Canton, Ohio. The trial court, in its judgment entry, discussed at length the propriety of awarding Thomson attorney fees for McGuire and Woods' representation. The court noted that McGuire and Woods had represented Thomson in his 1999 suit against Resource Recovery International, which resulted in a judgment of $1,275,000, and therefore it was reasonable for him to retain McGuire and Woods in the present litigation given their long-standing relationship. We note, furthermore, that it was Somerset Synfuel that

initiated the present litigation in Trumbull County. After Somerset Synfuel's dismissal from this case, either party could have transferred the litigation to Pennsylvania to avoid having to retain Ohio counsel.

{¶ 39} Resource Recovery International also claims that a "cursory review of the invoices" submitted to the trial court "reveals substantial duplicative fees." Specifically, it complains of billing for "conferences held between [Thomson's] counsel, including consultations between associates and partners at McGuire Woods and between counsel at McGuire Woods and Pelini & Associates." At the hearing, attorney Gregg Rosen of McGuire and Woods testified regarding the necessity and scope of the work performed by his firm, without objection by Resource Recovery International. Similarly, no argument was raised at the hearing regarding the reasonableness of Pelini & Associates' fees and costs. Therefore, the remaining part of the second assignment of error is without merit.

{¶ 40} This case is to be remanded for the trial court to hold a hearing to separate the portion of the attorney fees relating to the enforcement of the note from fees incurred for the unsuccessful attempt to enforce the forbearance agreement. Only the fees expended for collecting under the original note should be awarded to Thomson.

{¶ 41} *Cross-appeal*

{¶ 42} In Thomson's first assignment of error on cross-appeal, he argues that the trial court committed three distinct errors in computing the amount of interest to which he is entitled.

{¶ 43} First, he argues that the trial court committed a mathematical error in its computation of the "$28.43 in per diem interest under the Note from May 1, 2008 to the date of the Judgment Entry," i.e., April 21, 2009.[2] The court awarded Thomson the following: "$117,594.17 in principal and interest due under the Note, $28.43 in per diem interest under the Note from May 1, 2008 to the date of the Judgment Entry, $214,973.74 in attorney fees and costs accrued by Thomson while enforcing the Note, and $8,057.12 in accounting fees accrued by Thomson while enforcing the Note." The court stated the total amount of the judgment to be $340,991.03.

{¶ 44} According to the judgment entry, Thomson is entitled to $28.43 per diem for a period of 355 days, from May 1, 2008, until April 21, 2009—i.e., $10,092.65. When this figure is added to the other amounts awarded by the trial court—i.e.,

---

2. The trial court signed the judgment entry on April 21, 2009, although the entry was not journalized until April 23, 2009. In his brief, Thomson adopts April 23, 2009, as the date of the judgment entry. The trial court, however, contemplated April 21, 2009, as the date of the entry, as evidenced by this part of its judgment: "Including per diem interest, the total judgment amount as of April 21, 2009 is $340,001.03."

$340,625.03 for principal, interest, and fees, the total should have been $350,717.68. Apparently, the trial court inadvertently omitted the per diem interest when it calculated the total amount of the award.

 {¶ 45} Second, Thomson argues that the trial court erred in not awarding interest on the attorney and accounting fees awarded. As noted above, "[a]ttorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees." *Wilborn,* 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, at ¶ 7, citing *Nottingdale,* 33 Ohio St.3d at 34, 514 N.E.2d 702. "When the right to recover attorney fees arises·from a stipulation in a contract, the rationale permitting recovery is the 'fundamental right to contract freely with the expectation that the terms of the contract will be enforced.'" Id. at ¶ 8, citing *Nottingdale* at 36, 514 N.E.2d 702.

{¶ 46} Section 12(e) of the note at issue herein provides: "Maker shall pay to Payee, upon demand, any and all expenses, including legal expenses and reasonable attorneys' fees, incurred or paid by Payee in enforcing this Note, * * * together with interest therein at the Default Rate from the date paid or incurred by Payee until such expenses are paid by Maker."

{¶ 47} In an amended judgment entry, filed August 18, 2009, the trial court stated that it "did not intend to enforce interest due on legal and accounting fees." The court provided no explanation for its decision not to enforce this provision of the note. In the absence of any finding of unreasonableness, Thomson was entitled to expect that the terms of the note would be enforced, and the court erred by failing to enforce them. *Painters Supply & Equip. Co. v. Wagner,* 6th Dist. No. L–07–1320, 2008-Ohio-258, 2008 WL 203576, ¶ 17.

{¶ 48} Third, Thomson claims that the trial court erred in determining the amount of interest awarded. The court awarded interest at a rate of $28.43 per diem, "calculated by multiplying the principal due on the Note as of July 2, 2007—$69,168.54—by the default rate of 15% and then dividing that number by 365 days."[3]

{¶ 49} Thomson relies upon the following provisions in the note in support of his claim for a "blended interest rate," composed of interest due on the principal and interest due on the note, interest on late payments, and interest on fees and

---

3. The trial court's formula is derived from Section 3 of the note, which provides: "Interest on the principal sum of this Note shall be calculated by multiplying (a) the actual number of days elapsed in the period for which the calculation is being made by (b) a daily rate based on a three hundred sixty (360) day year (that is, the Applicable Interest Rate or the Default Rate, as then applicable, divided by 360) by (c) the outstanding principal balance." The per diem rate on the principal as calculated by Thomson's accountant, Pamela J. Schwer, is $28.82, based on the 360-day year provided for in the note.

costs: Section 3 providing that the "Note shall bear simple interest until maturity at the rate of ten percent (10%) per annum (the 'Applicable Interest Rate')," and that "if Maker does not pay any installment due under the terms of this Note when due, for any reason, Maker shall pay interest thereon at the applicable rate until the date of actual receipt of such installment by the Payee"; Section 5 providing that, in the event of default, the "[m]aker shall pay interest on the entire unpaid principal sum at a per annum rate equal to the lesser of (a) five percent (5%) plus the Applicable Interest Rate or (b) the maximum interest rate which Maker may by law pay (as applicable, the 'Default Rate'); and Section 12(e) providing for interest on attorney and accounting fees at the Default Rate of fifteen percent (15%)."

{¶ 50} Thomson claims he is entitled to $138.12 in blended per diem interest, based on a corrected total judgment of $350,717.68. According to his supplementary petition for fees and costs incurred while enforcing the note, accountant Pamela J. Schwer justified the amount of $138.12 per diem as the sum of $28.82 [4] per diem interest on the principal and interest at the default rate of 15 percent, $19.62 per diem interest on late payments at the applicable rate of 10 percent, and $89.68 per diem interest on fees and costs at the default rate of 15 percent.

{¶ 51} The trial court's award of per diem interest omits an interest award for late payments and for fees and costs. The court's omission of an award of interest on fees and costs arises from the court's conscious decision not to award such interest, so stated in its August 18, 2009 amended judgment entry. With respect to the omission of interest on late payments, the court's judgment is silent. As noted above, Thomson is entitled to interest on costs and fees according to the terms of the note signed by Recovery Resource International. Likewise, the note provides for interest on untimely installment payments at the applicable rate of 10 percent.

{¶ 52} In response, Resource Recovery International argues that the correct default interest rate is eight percent, that rate being "the maximum interest rate which Maker may by law pay" and less than five percent plus the applicable interest rate of ten percent. It relies upon R.C. 1343.01(A) and (B)(1), which provide, "The parties to a * * * promissory note * * * may stipulate therein for the payment of interest upon the amount thereof at any rate not exceeding eight per cent per annum payable annually," unless "[t]he original amount of the principal indebtedness stipulated in the * * * promissory note * * * exceeds one hundred thousand dollars."

---

4. For an explanation of the discrepancy between the trial court's and accountant Schwer's calculation of the interest owed on the principal and interest, see footnote 3.

{¶ 53} We decline to consider this argument because it was not raised in the court below. *Armstrong v. Marusic*, 11th Dist. No. 2001–L–232, 2004-Ohio-2594, 2004 WL 1144377, ¶ 21. In fact, the accountants who testified on behalf of Thomson and Resource Recovery International both understood the default rate of interest to be 15 percent. This is also the default rate of interest accepted by the trial court and applied to the principal and interest awarded to Thomson.

{¶ 54} Similarly, we reject Resource Recovery International's argument that Thomson is not entitled to prejudgment interest on costs and fees. This argument was not raised before the trial court and is inconsistent with the testimony proffered by Resource Recovery International's own accountant regarding interest on costs and fees.

{¶ 55} For these reasons, Thomson's first assignment of error on cross-appeal has merit.

{¶ 56} In his second assignment of error on cross-appeal, Thomson argues that the $400,000 on deposit with the clerk of courts is an inadequate supersedeas bond, as a matter of law, pursuant to Civ.R. 62(B) and App.R. 7(B).

{¶ 57} During the pendency of this appeal, Thomson and Resource Recovery International filed an agreed judgment entry in the trial court, directing the clerk of courts to immediately disburse to Thomson: "(1) $134,140.43 in principal due under the Note and interest at the rate of $28.43 per diem from May 1, 2008 to December 3, 2009 (as awarded in the Trial Court's April 23, 2009 Judgment Entry); and (2) per diem interest of $28.43 for every day after December 3, 2009 until monies due under section (1) are disbursed to Norman Thomson." The agreed judgment entry further provides that "the balance of the $400,000.00 currently on deposit with the Clerk of Courts shall remain on deposit with the Clerk pending finality of the action."

{¶ 58} Thomson's agreement to disburse a portion of the funds on deposit with the clerk of courts and have the balance remain evidences his belief that such funds do, in fact, constitute an adequate supersedeas bond for the interest, attorney and accounting fees, and costs sought in this appeal. Because Thomson has voluntarily altered the amount of the bond, the second assignment of error on cross-appeal is without merit.

{¶ 59} For the foregoing reasons, the part of the judgment of the Trumbull County Court of Common Pleas relating to the award of attorney fees and interest to Thomson is reversed. This cause is remanded to the trial court with instructions to (1) hold a hearing for the purposes of awarding attorney fees relating to Thompson's efforts in enforcing the original note only and (2) to reconsider its award of interest with respect to the untimely installment payments and fees and costs and to correct the mathematical error in failing to add

the per diem interest to the total interest award. Other respects of the judgment are affirmed.

{¶ 60} The judgment of the Trumbull County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

O'TOOLE, J., concurs.

GRENDELL, J., dissents.

DIANE V. GRENDELL, Judge, dissenting.

{¶ 61} I dissent from the majority's opinion and judgment with respect to the second assignment of error, in that it reverses the award of attorney fees to Thomson to the extent those fees were incurred in connection with the forbearance agreement. In all other respects, I concur in the majority's judgment.

{¶ 62} Section 12(e) of the Promissory Note at issue provides: "Maker [Resource Recovery International] shall pay to Payee [Thomson], upon demand, any and all expenses, including legal expenses and reasonable attorneys' fees, incurred or paid by Payee in enforcing this Note, whether or not any legal proceeding is commenced hereunder, together with interest therein at the Default Rate from the date paid or incurred by Payee until such expenses are paid by Maker."

{¶ 63} In the present case, Resource Recovery defaulted under the note to Thomson in 2004. Accordingly, Thomson was entitled to accelerate the total amount due under the note. Rather than accelerating the debt, Thomson believed that he had entered into an oral forbearance agreement with Resource Recovery, whereby he would forbear demanding the whole amount owed in exchange for partial payment and the transfer of certain properties and equipment located in Fayette County, Pennsylvania. At the time that Somerset Synfuel filed the interpleader action in January 2006, the property had not been transferred to Thomson, nor had Thomson taken legal action against Resource Recovery under the note.

{¶ 64} According to Section 12(e) of the note, Thomson is entitled to "any and all expenses * * * incurred or paid by Payee in enforcing this Note." The expenses incurred by Thomson in connection with the forbearance agreement were incurred for no other purpose than to secure enforcement of the note, while

avoiding the expenses of formal legal action. Thus, Thomson is entitled to these fees.

{¶ 65} The majority holds that Thomson is not entitled to these attorney fees on the grounds that the "forbearance agreement was an attempted settlement intended to *replace* the parties' original obligations under the note" and therefore "constituted a new contract." The majority's position lacks both a legal and factual foundation. The alleged forbearance agreement did not constitute a new contract.

{¶ 66} By definition, an agreement to forbear from accelerating the debt under a note does not constitute a new agreement. In order to create a new contract, "'there must be * * * a mutual agreement between the creditor and his debtor which is intended to extinguish the old obligation by substituting a new one therefore.'" *Natl. City Bank v. William Troy & Partners, Inc.* (Dec. 14, 1995), 8th Dist. No. 68367, 1995 WL 739610, *2, quoting *Fed. Land Bank of Louisville v. Taggart* (1987), 31 Ohio St.3d 8, 14, 31 OBR 6, 508 N.E.2d 152. Accordingly, an agreement like the one alleged by Thomson does not give rise to a novation, accord and satisfaction, or any other similar construction. Id.

{¶ 67} There is a complete lack of evidence in the record before us of any agreement intended to extinguish the balance of the note and substitute a new obligation. This point is illustrated by Thomson's hearing testimony:

{¶ 68} "Attorney: Was it your understanding that the note which provided for the payment of money to you for principal and accrued interest was joined together with what we're calling the forbearance agreement?

{¶ 69} "Thomson: Once I wrote the default letter, at that point there had to be a resolution. In the forbearance agreement was a resolution of the default is the way I understood it.

{¶ 70} "Attorney: So was it in your mind, did you regard it as a separate agreement or as part of the note?

{¶ 71} "Thomson: No. * * * I wrote the forbearance agreement according to the terms of the note. And the forbearance agreement I believe was a resolution of the default for the note, which I would assume the forbearance agreement would be part of the note. .

{¶ 72} " * * *

{¶ 73} "Attorney: And it is fair to say then that in your dealings regarding Resource Recovery you regarded their failure to transfer the equipment and transfer the property as default under the note?

{¶ 74} "Thomson: The default had occurred. It hadn't been cured, yes.

{¶ 75} "Attorney: But was it, was what you described as a default of the forbearance agreement, do you also see that as a default under the note?

{¶ 76} "Thomson: The default on the note occurred in '04. The cure for the default was the forbearance agreement. The forbearance agreement was never complete, so the original default still existed."

{¶ 77} Edward Kane, testifying on behalf of Resource Recovery, merely denied the existence or even the discussion of any forbearance agreement:

{¶ 78} "Retrospectively, since all of this has come out, I remember [Thomson] saying at one time, "You know I have a right to collect everything." And I said, "Go ahead. You're not going to get anything more than what you're supposed to get." That was it. That is all I ever heard. I never heard the word "forbearance." * * * Anything that would have to do with the note, which is the controlling document, would have to be in writing. There's nothing in writing, because there was nothing."

{¶ 79} Finally, counsel for Resource Recovery made it indisputably clear, in an exchange with the trial judge, that the alleged forbearance agreement did not modify or supersede the underlying note:

{¶ 80} "The Court: The forbearance note [sic], he's used the word an amendment to it, but the promissory note itself still carried whatever validity that it did.

{¶ 81} "Counsel: Yes.

{¶ 82} "The Court: It's just that they agreed for whatever compensation not to enforce that at that time. Am I wrong on that?

{¶ 83} "Counsel: I am in total agreement with your words * * * yes, I have never, other than claiming that the agreement does not exist, we have never claimed that it altered the note provision."

{¶ 84} Given this record, there is simply no basis for the majority's conclusion that the forbearance agreement constituted a new contract and that therefore, Thomson may not be awarded attorney fees in connection with it.

{¶ 85} The ancillary significance of the forbearance agreement is also evidenced by the course of the present litigation. Neither Somerset Synfuel's interpleader nor Resource Recovery's cross-claims mentioned the forbearance agreement. Thomson alleged the existence of the agreement in his cross-claim; however, none of Thomson's claims were based solely on this agreement. Rather, Thomson consistently sought damages for Resource Recovery's "fail[ure] to honor the Release, the Pay Order, the Note, the Security Agreement, and the Forbearance Agreement."

{¶ 86} The majority also cites Thomson's failure to prevail in the enforcement of the forbearance agreement as a reason for denying attorney fees in this regard. No authority is cited in support of this position.

{¶ 87} The provision of the note authorizing the recovery of attorney fees does not contain any such limitation, but speaks broadly of "any and all expenses," regardless of whether legal action even occurs. If formal legal action is not required for the recovery of attorney fees, it is difficult to infer the conclusion that Thomson is entitled to fees only where legal action has been successfully prosecuted. Cf. *J.B.H. Properties, Inc. v. N.E.S. Corp.*, 11th Dist. No. 2007–L–024, 2007-Ohio-7116, 2007 WL 4564392, at ¶ 11 (where the agreement limited the recovery of attorney fees to the "substantially prevailing party").

{¶ 88} Moreover, Thomson's "failure" was merely one part of his claim. Under the law of Ohio and this district, Thomson is the "prevailing party" in this matter and, therefore, entitled to the full amount of attorney fees deemed reasonable by the trial court. Ohio courts typically construe the prevailing party in an action as the "party who has obtained some relief in an action, even if that party has not sustained all of his or her claims" and "the party who prevails 'as to the substantial part of the litigation.'" *Kleeman v. Carriage Trace, Inc.*, 2d Dist. No. 21873, 2007-Ohio-4209, 2007 WL 2343756, at ¶ 100, quoting *First Commodity Traders, Inc. v. Heinold Commodities, Inc.* (C.A.7, 1985), 766 F.2d 1007, 1015. This standard had been previously used by this court when construing the issue of whether a party is entitled to fees. *J.B.H. Properties*, 2007-Ohio-7116, 2007 WL 4564392, at ¶ 18 (a party that "received some relief on the merits of its claims" was entitled to attorney fees), and ¶ 27 ("[T]he issue is who has won? In this case, the answer is simple. The jury returned a verdict in JBH's favor. Therefore, JBH is the prevailing party"). (Trapp, J., concurring.)

{¶ 89} The majority acknowledges the practical difficulties of determining what portion of the fees were expended in attempting to enforce the forbearance agreement. The records documenting the efforts of Thomson's attorneys in this matter are not issue-specific. They speak in terms of "correspondence," "e-mails," "documents," "discovery," and "conference." They do not reveal which aspects of the case were being considered. As noted above in regard to Thomson's cross-claim, the issue of the forbearance agreement is inextricably joined with the central claim based on the note itself. There will be more than considerable difficulty in the task facing the trial court on remand.

{¶ 90} Assuming, arguendo, that such a determination is possible, Resource Recovery should have pursued it during the hearings held on the reasonableness of the attorney fees claimed by Thomson. Because Resource Recovery was disputing the existence of the forbearance agreement and the issue remained open, it should have presented its case as to what percentage of the attorney fees

were attributable to work on the forbearance issue. The failure to do so constitutes a waiver of this issue on appeal.

{¶ 91} For the foregoing reasons, I would affirm the award of attorney fees to Thomson in its entirety.